Syllabus.

JOHN HIGGINS

*v.*

BRIDGET HALLIGAN.

46  173
39a 252
39a 363
46  173
47a 597
46  173
169 118
46  173
84a 655
46  173
86a 512
46  173
89a 1537
46  173
d94a 2496

1. PLEADINGS—*of the declaration—unnecessary allegations rejected as surplusage.* Where a count in the declaration described the plaintiff as an executrix, but was not on a liability to her as such, the action being brought to enforce a contract made with her in her individual capacity, such words of description can be rejected as surplusage.

2. TENDER—*party accepting of—when not concluded by.* Where a party accepts of a tender, if it be not accepted in full of all demands, such acceptance will not conclude him from proceeding for more.

3. TIME—*proper mode of computing—instruments to take effect from a specified day named therein.* The rule adopted by this court for the computation of time, where an instrument is to take effect from a particular day, is to exclude the day named therein, and include the day assigned for its termination. And this rule applies to a notice given to terminate a tenancy.

4. LANDLORD AND TENANT—*tenant from year to year—consequences of party holding over.* Where a tenant under a lease from year to year, is notified by his landlord before the expiration of his term, that if he occupies the premises another year, he must pay a certain increased rent, and the tenant holds over, such act will be construed as an implied agreement that he shall hold the premises upon the new terms imposed.

5. FORMER DECISIONS. The following cases are cited as sustaining this doctrine: *Prickett* v. *Ritter*, 16 Ill. 97 ; *McKinney* v. *Peck*, 28 ib. 178.

6. LANDLORD AND TENANT—*relation not changed by tenant holding over.* And in such case where the tenant continues in possession after notice imposing new terms, such act of holding over after the expiration of his term, paying rent, in no wise changes the relation between the parties of landlord and tenant, and an action for use and occupation upon the new terms, will lie.

7. FORMER DECISIONS. The case of *Dudding* v. *Hill*, 15 Ill. 61 and *McNair* v. *Schwartz*, 16 ib. 24, are not in conflict with this doctrine.

APPEAL from the Circuit Court of LaSalle County; the Hon. EDWIN S. LELAND, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. HOUGH & ELDRIDGE, for the appellant.

Messrs. BULL & FOLLETT, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the court:

This was an action of assumpsit, brought in the Circuit Court of LaSalle county, by Bridget Halligan against John Higgins, for the use and occupation of certain premises in the city of LaSalle.

The declaration contained four counts, the first of which describes the plaintiff as executrix of Patrick Halligan, deceased, and alleges that on the tenth day of September, 1866, and for three years prior thereto, the defendant had been her tenant from year to year, of the premises, and enjoyed the same at the yearly rent of five hundred dollars, payable quarterly; that each year of such tenancy commenced on the tenth day of September in each year, and that on the eleventh day of July, 1866, she gave the defendant written notice, declaring the tenancy to be ended on the tenth day of the then next September; that afterwards, on the 17th of July, 1866, she gave to the defendant another notice in writing, to the effect, that, notwithstanding her notice to terminate the tenancy on the tenth of September, she having been offered seven hundred dollars per annum, rent for the premises, was willing and ready to re-let them to the defendant for that sum, payable monthly or quarterly, on condition that defendant would execute a lease to that effect within five days from the 17th of July; and that if he failed so to do, and should hold over the premises after the tenth day of September, 1866, she would hold him liable for, and require him to pay for the premises, double the rent he was then paying under the tenancy terminating on the 10th of September.

The plaintiff then avers that the defendant did not surrender possession of the premises to her on the tenth of September,

1866, but held over, and still continued to hold over, notwithstanding the termination of the tenancy, the tenth day of September having long since elapsed; that she, during all the time aforesaid was entitled to the reversion of the premises, and to receive and enjoy the rents and profits thereof; and she further averred that the defendant did not and would not execute a lease for the yearly rent of seven hundred dollars, and she demands rent at the rate of one thousand dollars per annum, payable quarterly, and avers that of that sum two hundred and fifty dollars is due and unpaid.

The second and third counts declare upon a tenancy from year to year, at the yearly rent of one thousand dollars, payable quarterly, of which sum two hundred and fifty dollars was due and unpaid.

The fourth count is the common *indebitatus* count for the use and occupation of the premises by the defendant at his request, and which, by the sufferance and permission of the plaintiff, he had a long time held and enjoyed, and on an account stated.

The suit was brought to the February term, 1867.

A demurrer to the declaration having been overruled, the defendant pleaded *non assumpsit*, payment; and as to all except the sum of one hundred and twenty-five dollars, he did not undertake and promise; and as to the sum of one hundred and twenty-five dollars, he tendered the same to the plaintiff before the commencement of the suit, which she refused to accept, etc.

He also pleaded *ne unques executrix*.

A demurrer was sustained to the third and fourth pleas. The defendant amended the third plea by writing the words, "and now brings the same into court here, ready to pay to the plaintiff if she will accept the same," and abided by the demurrer to the fourth plea.

Issues were made up on these pleas, a jury waived, a trial had by the court, and a finding for the plaintiff of one hundred and twenty-nine dollars and sixty cents.

A motion for a new trial was overruled and exception taken, and a judgment rendered on the verdict.

To reverse this judgment, the defendant brings the record here by appeal, and insists upon these errors assigned, that the court erred in sustaining the demurrer to the fourth plea; that improper evidence was admitted on behalf of plaintiff, and that a new trial should have been awarded.

As to the first point, it will be seen that the plaintiff does not declare as executrix, nor aver that the contract was made with her testator, but with herself, in her individual character. The suit is brought to enforce a contract made with her in her own right, and not in a fiduciary or representative capacity. Describing herself as executrix, if the count was not on a liability to her as such, is mere surplusage the words are of no importance, and can be rejected without prejudicing the case in any way. On this point a reference to authorities is unnecessary, but see, *Savage, Admr.* v. *Meriam et al.*, 1 Blackford 176; *Biddle, Admr.* v. *Wilkins*, 1 Peters, 686; *Talmadge, Admr.* v. *Chapel et al.*, 16 Mass. 71; *Bond* v. *Betts, Admr.*, Breese, 205; *Burnap* v. *Wight*, 14 Ill. 301; *Patrick* v. *Rucker*, 19 ib. 429.

The plaintiff made no profert of letters testamentary in her declaration, as she was suing in her own right. *Brent* v. *Shook*, 36 Ill. 125.

The acceptance by the plaintiff of one hundred and twenty-five dollars, tendered by the defendant, is urged by him as a concession that this amount was all that was due, and entitled the defendant to a judgment for costs, is the second point, made by appellant. There is no authority cited on this point, and there can be none, for the doctrine is well established, that accepting a sum tendered, if not accepted in full of all demands, does not conclude the party from proceeding for more.

In *Ryal* v. *Rich*, 10 East 47, which was an action for double rent, and for use and occupation, the defendant pleaded tender of the single rent before action brought and paid the money

into court, which the plaintiff took out before the trial, and still proceeded. It was held that the acceptance of the single rent was no waiver of the plaintiff's right to proceed for the double rent, and that the plaintiff's going on with the action after taking the single rent out of court, was evidence to show that he did not mean to waive his claim for the double value, but to take it *pro tanto*.

To the same effect is the case of *Sleght* v. *Rhinelander et al.*, 1 Johns. 192.

The next point made by the appellant is, that the notice to terminate the tenancy was not sufficient.

The lease is dated January 18, 1860, and demises the premises from the tenth day of September of that year "for and during the space of three years." The notice was dated and served July 10, 1866, and required possession to be delivered to the lessor on the tenth of September, following.

The appellant insists that the lease did not take effect *instanter*, but from a future day, and did not become operative until September eleventh, and therefore did not expire until September eleventh; the notice, therefore, to surrender by the tenth, not being given sixty days prior to the end of the yearly term, was inoperative, and could not terminate the tenancy.

The question arises, when, under the terms of this lease, did the tenancy terminate? The rule generally received and acted on in such cases is, to count the day of the execution of the lease out, and the date of its termination in. The interest passing September tenth, that day is to be counted out, and the day assigned for its termination counted in, by which rule the demise ended on the tenth of September of each year. This is the rule adopted in *Ewing* v. *Bailey*, 4 Scam. 420; and in *Waterman* v. *Jones*, 28 Ill. 54. Adopting the same rule in regard to the notice, and counting the tenth of July, the day of its date, out, and also the tenth of September, out, which

23—46TH ILL.

the rule does not require, there remain full sixty days, which the statute prescribes. The tenth of September would end the year, if the term commenced on the eleventh, and the notice was served sixty days before the end of the year, which is sufficient under the act of 1861, which provides, in all cases of tenancy from year to year, sixty days' notice shall be sufficient to terminate the tenancy at the end of the year after such notice is given.

But the appellee contends that the words "from the tenth of September," are to be construed according to the intention of the parties, to be ascertained from all the facts and circumstances, and from the concurrent acts and declarations of the parties. We think there is reason in this position, and the authorities are to that effect. Taylor's Landlord and Tenant, §78.

In this case, it appears by the record, that the parties to the lease treated the time as commencing on the tenth, and appellant paid rent up to the tenth, and this ought to conclude them.

If, according to some authorities, the day of the date of the lease is to be included, then it terminated on the ninth; if it is excluded, then the term ended on the tenth, and the notice was sufficient. In *Marcy* v. *Anderson*, 24 Penn. 272, it was held, when the demise was for one year from the first day of April next ensuing the date of the lease, that the term ended on the 31st day of March, and that such was the common sense and understanding of such a contract.

This decision may be referred to another principle which is generally acknowledged, that when the words from the date are made use of to denote the *terminus a quo*, an immediate interest is to pass—the date of the instrument is inclusive; but when used by way of computation of time, as in the execution of an appeal bond or such like instruments, a distinction is taken, and the day of the date is excluded, as in *Ewing* v. *Bailey*, and *Waterman* v. *Jones*, *supra*. But in this it is immaterial, as on the appellant's theory, that the term com-

menced on the eleventh, it ended on the tenth, so that the notice was sufficient.

Appellant insists that even if the notice was sufficient to terminate the tenancy, either the tenant held over willfully, or under the terms of the original lease, and if the latter, then an implied agreement arose to pay the amount specified in the lease; if the former, then no tenancy existed between the parties, and the action should be debt under the statute for double rent or by action on the case, citing *Dudding* v. *Hill*, 15 Ill. 61, and *McNair* v. *Schwartz*, 16 ib. 24. The case first named, was a case where Dudding went into possession under a claim of title, and not as tenant of Mrs. Hill, who, notwithstanding that fact, had recovered of Dudding in an action for use and occupation, a verdict. He was holding adversely to Mrs. Hill, and the court very correctly held that the action for use and occupation did not lie, as the relation of landlord and tenant did not exist, and to the same effect is the other case cited. We do not perceive their bearing on the point made.

This case abundantly shows the relation of landlord and tenant did exist by virtue of the lease. Holding over by the tenant for three years after the expiration of the lease, paying rent did not destroy that relation. Nor is this action for double rent, under the statute.

While the appellant was holding the premises after the lease had expired, he was liable to his landlord for the rent according to the terms of the lease; no change having been made in those terms, he will be presumed to so have held; but on being notified on the 17th of July, 1866, during the sixth year of his tenancy, if he continued to occupy the premises after the tenth day of September, of that year, he would be required to pay rent at the rate of seven hundred dollars per annum, and enter into writings by a certain day, and he not objecting thereto, but continued in the possession, no argument or authority is needed to show the extent of his liability under such circumstances. The inference is irresistible, that he was content

to hold at the increased rent, and his assent thereto will be implied. The presumption, that he held, after this notice, on the terms of the original lease, is fully rebutted by his own act and conduct. If a landlord duly notifies his tenant, who is holding by the year, and before the year is out, that if he occupies the premises another year, he must pay a certain increased rent, and the tenant does not surrender the possession, but continues to occupy them, can any one doubt his acquiescence in the new terms, and his liability on account thereof? This is the doctrine of the cases cited: *Prickett* v. *Ritter*, 16 Ill. 97, and *McKinney* v. *Peck*, 28 ib. 178.

It is very certain to our minds, that the notice of July 10th put an end to the tenancy on the tenth of September following, and the tenant was duly notified on the 17th of July the tenancy would not be continued on the original terms. He knew the terms upon which he could hold them, if he held over, and by his silence and continued possession, his acquiescence in those terms must be presumed. What was his position, then? He was then, after the tenth of September, a mere tenant at will, and the landlord was entitled to recover rent to the time of bringing suit, as the appellant could have terminated the tenancy by his own act at any moment after the tenth of September.

We do not deem it important to inquire if the appellee sustained the first three counts of the declaration, if the fourth was sustained; and that it was, is indisputable, even to a greater extent than the finding of the court.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*