JOHN GRIFFIN

*v.*

ABRAHAM J. KNISELY.

1. LEASE — *rule for determining whether instrument is a lease or agreement for.* In determining whether an instrument is a lease or only an agreement for a lease, the question is one of construction, to be determined from what appears to be the paramount intention of the parties, as collected from the whole tenor and effect of the instrument. And the same rule applies where the agreement is not reduced to writing, the words used indicating the intention.

2. SAME — *whether an agreement is a present leasing or a contract to lease.* Where a party was in possession of premises under an unexpired lease, and it was agreed, verbally, between him and his lessor that he should have the premises for another year, commencing at the expiration of the existing term, upon the same terms, a written lease to be executed, and the old lease was not cancelled, and a few days before the new term was to commence the landlord withdrew his proposition and rescinded the verbal agreement, so that there was no time before such rescission that the lessee could have entered under the verbal agreement: *Held*, that this was not a present leasing, but only an agreement for a lease.

3. CONTRACT — *whether rightfully rescinded.* Where the owner of property in pursuance of a verbal agreement to lease the same, no time being fixed for the execution of the lease, within a reasonable time before the term was to commence executed in duplicate a lease, one copy of which he signed, and sent the other to the party desiring to lease, to be signed by

him, with directions to deliver the one signed by the lessor when this was done, and the other party, making no objection to the lease or its terms, declined to sign, and did not sign it until a few days before the term was to commence, and until he was notified that the offer to lease was withdrawn, he furnishing no excuse for the delay: *Held,* that the owner was justified in rescinding his agreement to lease, and the other party could not thereafter insist upon the verbal agreement.

4. Where no time is fixed for the performance of a verbal contract to execute a written lease, and one party refuses to comply by executing a lease sent him, in a reasonable time thereafter, the other will have the legal right to rescind the agreement.

5. LANDLORD AND TENANT — *where party holds over after time expires with notice that new terms will be required, his assent will be presumed.* Where a party who had leased a part of a dock-yard was notified by the owner, before the expiration of his term, that he could have the same no longer, unless he took the entire premises and paid a certain price per foot frontage as rent, and the tenant held over, and occasionally did use the entire premises, but objected to the new terms sought to be imposed: *Held,* that by remaining for another year after such notice, notwithstanding his objection, he became liable to pay for the whole premises according to the new terms imposed, and that it would be presumed he finally acceded to them.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

This was assumpsit, by appellee against appellant, for the use and occupation of a dock belonging to appellee, situated upon Magazine slip and Halsted street, in the city of Chicago, from May 1, 1871, to May 1, 1872. The dock was 261$\frac{7}{12}$ feet front on Halsted street. The same premises were rented the previous year—from May 1, 1870, to May 1, 1871,—to A. E. Chamberlain & Co. and appellant, and by them divided into separate parts and occupied to suit their convenience. Appellant occupied the south part of the premises and Chamberlain & Co. the north part—and each party received a separate lease from appellee for the part he occupied, and paid in quarterly payments therefor, at the rate of $1,307.92 per annum. In the latter part of March, 1871, appellant applied to appellee to rent the premises then occupied by him for another year, from

the 1st of May, 1871, to May 1, 1872. Appellee agreed to let him have them at the same rent he was then paying. On the 16th of April following, appellee made out a written lease for the premises to appellant, in duplicate, one of which, unsigned by himself, he sent by his agent to appellant for his signature, the other he signed himself and also placed in the hands of his agent, with instructions when appellant signed and returned him the other, to deliver it to appellant. The agent handed the unsigned duplicate to appellant and requested him to sign it, but he declined, for the reason that he wanted to see appellee first to make some arrangement about a shed, etc. The agent left the unsigned duplicate with him and returned the other to appellee. On the 27th of April, 1871, appellant not yet having signed and returned the duplicate left with him, appellee tore his name from the one he had signed, and which had not been delivered to appellant, and addressed a letter to appellant informing him that he then withdrew any and all offers he had made for renting the dock to him. This letter was handed appellant by appellee's agent on the same day, and shortly after it was written.

Appellant, upon receiving the letter, immediately signed the duplicate in his possession, carried it to appellee, tendered it to him, and demanded a lease for the property. Appellee declined to execute it, informing him that he must then rent the entire dock and premises, or none. This, appellant refused to do. Appellee thereupon notified him that if he continued to occupy the premises after the 1st of May, 1871, he should charge him with the rent of the entire premises, at the rate of $12 per foot front, estimating the frontage on Halsted street.

Appellant continued to occupy the premises, without any further agreement with appellee, from May 1, 1871, to May 1, 1872. Payments were made by appellant during the year, which appellee received — not as in discharge of the rent, but on account — amounting to $981.40. He also paid into court, while the suit was pending, $326.98.

The verdict of the jury was for $1,200, which it is conceded was the amount due, if appellant was liable for the rent of the entire property, at the same rate it was rented to Chamberlain & Co. and appellant, for the year, from May 1, 1870, to May 1, 1871. If, however, appellant was liable to pay at the rate of $12 per foot front on Halsted street for the entire property, the verdict is too small by $629.62.

Appellant claims that he is only liable for the rent of the part which appellee agreed to rent him, and consequently that the verdict should have been only for $326.98, the amount which he paid into court.

The other facts, material to an understanding of the case, will appear in the opinion of the court.

Messrs. DICKEY & CAULFIELD, and Mr. ROBERT H. PATTEN for the appellant.

Mr. S. K. Dow, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first question presented on this record is, whether the agreement between the parties made in the latter part of March, 1871, for the renting of the premises from May 1, 1871, to May 1, 1872, was a present letting. Appellant insists that it was, and cites numerous authorities, which he claims sustain his position. We think the authorities are inapplicable to the case as made by the evidence. In determining whether an instrument is a lease, or only an agreement for a lease, the question is said to be one of construction, to be determined according to what appears to be the paramount intention of the parties, as such intention may be collected from the whole tenor and effect of the instrument. Taylor on Landlord and Tenant, § 38. The rule must equally obtain where the agreement has not been reduced to writing, as where it has been, that is, the intention of the parties, as ascertained from the words of the agreement, must, in such cases, as well as where there is written evidence of

the contract, control.  When this agreement was made, appellant was in possession of the premises under a prior lease, the term of which did not expire for more than a month.  That lease was not canceled, nor does it appear that it was desired it should be canceled.  Appellant's possession during the continuance of that term, could, therefore, be only under and by virtue of that lease. The term about which the parties agreed, was not to commence until the term then running had expired, which was on the 1st of May, 1871 ; and it was expressly understood between them, that a formal lease for the premises was to be executed.  Before the expiration of the existing term, and the commencement of the new term, namely, on the 27th of April, 1871, appellee withdrew his proposition to let appellant have the premises from May 1, 1871, to May 1, 1872, so there was no period of time between the making of the agreement and the withdrawal of the proposition by appellee, within which appellant could possibly have made an entry under the agreement.  This brings us to the question, whether, under the evidence, appellee's withdrawal of his proposition to let appellant have the premises, and his notice to him that if he continued to hold over after the 1st of May, 1871, he would be held to other and different conditions, was a sufficient rescinding of the agreement of the last of March, or did that agreement still continue in force, notwithstanding this attempt to rescind it ?  If we shall hold the former, then, obviously, the question discussed, whether the duplicate of the lease signed by appellee, but retained in his possession, and never delivered to appellant, was sufficient to relieve the case from the effect of the first section of our statute of " Frauds and Perjuries," is unimportant; but, if otherwise, and in that event only, it will become necessary also to pass on that question.

The agreement being for a lease, would have been discharged by the execution of a lease in conformity with the terms of the agreement.  This was to have been done, by necessary implication, nothing being said in the agreement as to time, within a reasonable time before the commencement of the term.  Both

appellant and appellee were entitled to exact this. Appellee was entitled to have the agreement consummated, so as to know that his premises were certainly let upon terms satisfactory to himself, and their performance guaranteed, in such time as would enable him to secure the continuous occupancy of his premises by a tenant; and appellant was entitled to its consummation, in such time as to insure himself against being deprived, for any length of time, of a place of business.

On the 16th of April, 1871, appellee executed, in duplicate, a lease to the premises, in conformity with the agreement, one copy of which he signed himself, and the other he sent to appellant, to be signed by him. When this was done, appellee's agent was instructed to hand appellant the duplicate signed by appellee, and return to him the one signed by appellant. The duplicate was sent immediately upon its execution, by appellee's agent, to appellant, and he was notified by the agent of his instructions, and requested to sign it; but he refused to do so. For this refusal he furnishes no excuse whatever. No objection is made that the instrument was, in any respect, incorrect, or that it was not strictly in conformity with the agreement. He does not pretend that he failed to comprehend its terms, or that he wished to have legal counsel. He wanted to see appellant, he said, first; not about what ought to have been in the lease but was omitted, but " to make some arrangements about a shed," etc.; in other words, to make another agreement. It does not appear that the situation of these parties was such that appellant could not have seen appellee, at any time he had chosen, with but little trouble, but he seems not to have cared to put himself to that trouble. Appellee's evidence is that he repeatedly tried to get appellant to sign the lease, but was unable to do so. Finally, on the 27th of April, only four days before the expiration of appellant's term, appellee sent him a notice, in writing, that, in consequence of his having repeatedly declined to sign the lease, he withdrew all offers he had made to rent the property to him. Appel-

lant then, after receiving this notice, signed the duplicate, and followed appellee's agent to where appellee was, when appellee again verbally notified him that, in consequence of his repeated neglect and refusal to sign the lease, in proper time, he had withdrawn the proposition to rent the premises, and, if he then rented, he must take the whole property, etc. We think the evidence is clear that appellant refused to sign the lease within what, under the circumstances, was a reasonable time. Appellee was only bound to give him a reasonable time within which to satisfy himself with its contents and to sign it, and this he had before being notified that the proposition to rent was withdrawn. Our conclusion, therefore, necessarily is, that appellee had the legal right to rescind the agreement because of appellant's refusal to comply with its terms within a reasonable time. The agreement having been rescinded before the commencement of the term to which it related, no entry could be made under claim of a license which it, if unrescinded, might have conferred.

The next question is, whether appellant, continuing to hold over after the expiration of his term, and with full notice that, if he did so, he would be charged for the rent of the whole property, at the rate of $12 per foot front on Halsted street, is to be charged only with the same rent, which he paid the preceding year for the half of the property which he then occupied. This is the claim made by appellant; he concedes that, if he had held over, after notice of the terms, without objection, he might be held responsible upon the contract. But what difference can his objection make? The property belonged to appellee, and he surely might charge for its use what he pleased. If appellant was not willing to accede to his terms, he should have left the property. He had no right to remain in possession against appellee's wishes, and force him to accept himself as a tenant, on the same terms that he held the property the preceding year. Notwithstanding his objection to appellee's terms, inasmuch as appellee did not, upon his urging his objections, consent to modify them, his subsequent holding over raises the presumption

that he finally concluded to accede to them—and that his tenancy from May 1, 1871, to May 1, 1872, was by contract for the entire premises, at the rate of $12 per foot front on Halsted street. This is within the principle announced in *Higgins* v. *Halligan*, 46 Ill. 173.

There was evidence before the jury from which they were authorized to find an actual occupancy, by appellant, of the entire premises. It was not necessary that the evidence should show, for this purpose, that he was constantly using the premises :— possession being once taken, the agreement determines the period to which the liability of the party extends. Taylor on Landlord and Tenant, § 646.

We deem it unnecessary to enter into a critical examination of the instructions given and refused. The verdict is more favorable to appellant than he was, under the evidence, entitled to have it, and it does not lie with him to say it shall therefore be reversed. Even if there was, therefore, error in respect to the instructions, appellant has not been prejudiced thereby.

The judgment is affirmed.

*Judgment affirmed.*