# THE ST. LOUIS & CAIRO RAILROAD COMPANY

## v.

# THE EAST ST. LOUIS & CARONDELET RAILROAD COMPANY.

*Landlord and Tenant—Lease of Track—Railroads—Rental—Recovery of.*

1.  Franchises as well as lands and tenements may be demised. A railroad company may lease its franchises and property by authority of the Legislature.

2.  A receiver can not, under a contract between his insolvent and another, enter upon and use the property of the latter and without his consent repudiate or change the terms thereof.

3.  The assignee of the lessee of a railroad track, using the same under the conditions of a lease duly entered into, is bound to pay the rent according to the terms thereof.

4.  This court declines, in view of the evidence. to interfere with the judgment in behalf of the plaintiff in an action brought to recover a balance alleged to be due for the rental and use of its track and right of way by defendant company.

[Opinion filed February 2, 1891.]

APPEAL from the Circuit Court of St. Clair County; the Hon. GEORGE W. WALL, Judge, presiding.

This was a suit in assumpsit brought by appellee against appellant to recover a balance alleged to be due for the rental and use of appellant's track and right of way from December 12, 1881, to the 31st day of August, 1883, inclusive, at the rate of $25 per day, *ad damnum* $12,000. The cause was tried by the court by consent of the parties, and no written propositions were presented by either party to the court, to be held as the law in the decision of the case. The court found the issues for the plaintiff and assessed its damages at $11,004.34. Defendant's motion for a new trial was overruled. Judgment was entered for plaintiff on the finding of the court and defendant took this appeal.

The contract relied upon by plaintiff below to sustain its right of recovery under the facts proven, is as follows:

The East St. Louis & Carondelet Railway will permit the Cairo & St. Louis Railroad Company to run trains upon their road from the junction near and below Cahokia to the railroad of the Illinois & St. Louis Railroad Coal Company, near East St. Louis, from and after the first day of May, A. D. 1873, for five years next ensuing, upon the following conditions, viz. :

1. The Cairo & St. Louis Railroad Company shall furnish materials necessary for a third rail between the rails of the main track of the East St. Louis & Carondelet Railway, including rails, frogs, switches, fastenings, etc., and to repay the cost of laying the same, to be done by and under the direction of the East St. Louis & Carondelet Railway.

2. The Cairo & St. Louis Railroad Company shall pay for each loaded car run over said road, or to intermediate points on the line, fifty cents, provided there are no more than fifty cars so run per day; all cars over the number of fifty per day and not exceeding seventy-five in the aggregate, shall be paid for with forty cents per car; all cars over seventy-five and not exceeding one hundred in the aggregate shall be paid for with thirty cents per car, and all cars over one hundred per day shall be paid at the rate of twenty-five cents per car, payments to be made monthly, on the 10th day of each month, for the month expiring on the last day of the next preceding month, at the office of the East St. Louis & Carondelet Railway, at East St. Louis, Illinois.

Provided that from and after the 1st day of July next, the said Cairo & St. Louis Railroad Company shall pay for the privilege granted them by this agreement not less than $25 per day, whether the sum due under the above enumerated rate of charges amounts to that sum or not.

3. The roadbed and track to be kept in repair by the East St. Louis & Carondelet Railway at their expense, excepting only the cost of renewals required on the line of third rail, and frogs and switches necessary, and maintained for the use of said Cairo & St. Louis Railroad.

4. The time table for the passenger trains for the Cairo & St. Louis Railroad shall be established by mutual agreement

between the proper representatives of the parties hereto, so as to answer the purpose of said Cairo & St. Louis Railroad Company as near as may be without manifest injury and detriment to the interests of the East St. Louis & Carondelet Railway.

5. The time for the running of freight trains by the Cairo & St. Louis Railroad Company shall be fixed by the East St. Louis & Carondelet Railway Company, so as to permit as many as six trains each way daily; provided that every freight train run on such time table shall, from and after the first day of June next, be counted as made up of not less than thirty cars, unless there be less than thirty cars to run a day.

6. Either party, by their president or general manager, shall have the right to terminate this agreement upon ninety days written notice, from and after July 1, 1873, in which case the materials furnished by the Cairo & St. Louis Railroad Company shall be returned to them in as good condition as received, natural wear and decay excepted.

7. Cars passing loaded one way shall be passed on their return free of charge, if returned within ten days; empty cars, if returned loaded within ten days, shall only be charged for one time; otherwise empty cars shall be charged for same as loaded cars.

8. Any disagreement arising between the parties hereto, from and under the terms hereof, shall be referred to and decided by arbitrators, one to be chosen by each party, and a third one by the two thus chosen; a decision of a majority of them, in writing, shall be final.

Dated and executed in duplicate this 30th day of April, 1873. Signatures and seals of both parties.

Before this contract was executed, the said second party thereto had executed its trust deed, conveying to the Union Trust Company, of New York, its railroad rolling stock, property, rights and franchises, and all property, rights and franchises thereafter by it acquired, to secure $2,500,000 of its bonds, and default having been made in the payment of interest thereon, suit against it was instituted by the Union Trust Company in the Federal Circuit Court for the South-

ern District of Illinois. By the decree of said court H. W. Smithers was appointed receiver of all property of said Cairo & St. Louis Railroad Company, and on December 6, 1877, as such receiver, he took possession and control of all the railroad property of that company, and entered upon and used the track described in said contract from that date until February 1, 1882. By the decree of said Circuit Court of the United States, said deed of trust was foreclosed, and in pursuance of the decree the master in chancery of said court, on December 22, 1881, conveyed to trustees all the property covered by the deed of trust, and on January 31, 1882, said trustees conveyed said property to appellant.

On January 30, 1882, Smithers conveyed to appellant all his interest in any and all property he had acquired as receiver, and on February 1, 1882, appellant was put into and took possession of said railroad property, including the track mentioned in said contract, from said receiver, and continued to use and occupy the said track and the single rail mentioned and provided for in said contract until August 31, 1883, and paid as rent therefor to appellee divers sums of money at successive periods during said time, which were received *on account of rent.*

It further appears by the testimony of Mr. Coulogne, who was the president of appellee's company at the time Smithers was appointed receiver, and continued as such president until 1880 or 1881, and who executed said contract on its behalf, that the sum fixed by that contract to be paid for the use of said track by appellee was not reduced; that applications were made to him for a reduction or a new contract, which he did not consent to, but declined to make any reduction or new contract, until the arrearages under the original contract were paid; that he made no contract with Smithers in reference to the rental to be paid under said contract; that he had conversation at different times with some of the officials in regard to a reduction of said track rent; the only arrangement to the best of his recollection was that they would continue under the old contract by paying monthly, on account, a certain sum of $333.33⅓ per month; that whenever application was made

to him for reduction, he invariably told them, "We shall hold to the old contract until that is settled up."

Smithers testified he had several interviews with Coulogue touching the reduction of track rent; that he distinctly refused, from the very beginning of his conversations with Coulogue, to recognize any liability as receiver for any *back rent* due by the railroad company except so far as the court might order him to pay, and refused to recognize the existence of the old contract for the use of the track as in any way binding on him as receiver, and refused to pay any such *rental* as the old company had agreed to pay for the use of the track; that no agreement was reached as to the amount of rental which should be paid for the use of appellee's road; that he never authorized the payment of more than $4,000 per annum for the use of said track, and authorized that amount to be paid in monthly installments, and that it was open to Mr. Coulogue at any time after Smithers was appointed receiver, to refuse to allow the latter's trains the right to run over this road; that he did not agree to extend or carry out any written contract made between appellee and the Cairo & St. Louis Railroad Company.

Thomas, who was appellee's cashier from May 1, 1882, to December 1, 1886, and had charge of its books, testified an account was kept of this track rent on said books, charging appellant with each month's rent at $25 per day, and impressions of monthly statements appearing in the letter book of appellee were put in evidence in the handwriting of Thomas for track rent for each of the months of June, July and September, 1882. The statement for the rent will serve to show the character of each, and is as follows:

"July 1st, 1882.

*St. Louis & Cairo Railroad Co.,*

To EAST ST. LOUIS & CARONDELET RAILWAY, DR.:

July 1. To rent of track for the month of June, 1882, 30 days, at $25 per day, $750."

Thomas testified that, to the best of his knowledge, these accounts were transmitted to defendant, or some of its officials, at the time the impressions were taken, during the first days

of the month for the month preceding; and on cross-examination testified he was not positive these monthly bills were made or presented every month; that he was positive he presented the bill for the month of May in June, 1882, but did not recollect positively of having presented any others; that he presented the bills to appellee's cashier, who refused to pay the bill, and witness received $323 on account; that when he went to collect at appellee's office, they would first present to him, for his signature, a voucher, as follows:

"*St. Louis & Cairo Railroad Company*,

To E. St. Louis & Carondelet Ry. of East St. Louis, Dr.
 1882.

  Dec. For rent of track between E. St. Louis
      and South Junction for the month
      ending Dec. 81, 1882............... $ 333.31

I hereby certify that I have verified all the computations herein and find them correct.

 Examined, found correct and entered. Audit. No. 977.

 Approved:  Louis Enos, Auditor.

      C. Hamilton, General Superintendent.

 Received this  day of  , 188 , from St. Louis & Cairo Railroad Company, the sum of three hundred and thirty-three 31-100 dollars ($333.31), in full of the above account."

This style of voucher he would refuse to sign and they would then present the following receipt which he would fill out and sign:

"Received of St. Louis & Cairo Railroad, three hundred and thirty-three dollars on account of rent for month of
1882.        Geo. K. Thomas, Cashier."

Chas. Hamilton testified he was in charge of appellant's railroad for Receiver Smithers, prior to February 1, 1882, when he took charge of it for appellant; that $4,000 per year was paid monthly, and continued to be paid, after appellant took charge and until that company surrendered it August 31, 1883; that Mr. Thomas has the acknowledgment of the only claim for rent, at the rate of $25 per day, ever made on

him; that was dated March 2, 1886; up to that time did not know that the claim would be for $25 per day; was never presented with monthly bill for that rent at that rate, nor for any amount; the company never made any agreement in relation to any former contract to pay $25 per day; the business was done after appellant took possession, precisely the same as it was done under the receivership; they paid them $333.33 a month in the same manner. The following correspondence was also used in evidence on behalf of appellee.

"·St. Louis, May 30, 1883.

St. Louis & Cairo Railroad Co.

Chas. Hamilton, General Superintendent.

Col. J. Hill, Gen'l Supt., E. St. L. & C. Ry,

St. Louis, Mo.

*Dear Sir:*—Having about completed our own track from East St. Louis to South Junction, we will not require the use of your road after the 31st of this month. As our embankment is quite new, will you kindly permit our connection to remain untouched a few days, until I am quite safe from extreme high water, should we have it.

Yours very truly,

C. Hamilton, Gen'l Supt."

" East St. Louis & Carondelet Railway.

Joseph Hill, General Superintendent.

General Superintendent's Office, St. Louis, Mo.,

June 1, 1883.

Chas. Hamilton, Esq.,

Gen'l Supt., St. Louis & Cairo R. R. Co.

*Dear Sir:*—I have your letter of May 30, 1883, advising me that you will not require the use of this road after May 31, 1883. My understanding of the agreement under which your company has used this road is, that it requires ninety days notice to terminate it, and I shall so construe your notice.

Yours truly,

J. Hill, Gen'l Supt."

" ST. LOUIS & CAIRO RAILROAD COMPANY.
General Superintendent's Office.
Chas. Hamilton, General Superintendent.

ST. LOUIS, August 29, 1883.

COL. J. HILL, Gen'l Supt., East St. Louis & Carondelet Railway, St. Louis, Mo.

*Dear Sir:*—As we have at last gotten onto our own track between East St. Louis and South Junction and have no longer use for your road between those two points, and the ninety days notice, which you claim as due you, expires on Friday next, I would like to take up our rail as soon as possible and get it out of your way. If I take the rails up and put them in piles of a carload in a place, what would you charge me for hauling them down to South Junction.

Very truly,
C. HAMILTON, Gen'l Supt."

Appellee also read in evidence an impression copy of statement, dated April 30, 1882, for the rent of track from December 1, 1877, to April 30, 1882, charging track rent at twenty-five dollars per day, and crediting payments received. The evidence did not show this statement to have been transmitted to and received by appellant's officers, or any of them.

Messrs. POLLARD & WERNER, for appellant.

Mr. A. S. WILDER, for appellee.

GREEN, J. We have included in the foregoing statement so much of the evidence as we deem material in the consideration of this case.

It is contended by appellant that the contract of April 3, 1873, between appellee and the Cairo & St. Louis Railroad Company, was not a lease; that it expired by its terms on the last day of April, 1878, when the road was operated by the receiver, who positively repudiated its terms and refused to pay the contract price for the use of the track; that when defendant came into possession of the railroad it continued to use plaintiff's track as the receiver had been doing, without any agreement, and without anything being said in relation to

the use of this track or the compensation therefor, and there is nothing to show the defendant knew there was or had been any written contract.   Hence this suit can not be maintained, because it is brought upon an alleged agreement of defendant to pay $25 per day for the use of plaintiff's track, and no such promise can be implied from the facts and circumstances proven.

To us it seems the contract possesses all the essential qualities of a lease, and was intended to be such by the parties executing it.   The Cairo & St. Louis Railroad Company's road was a narrow gauge road, the northern terminus of which was East St. Louis.   At the date of the contract its road extended north only to the junction below Cahokia, and from that point to reach East St. Louis and carry freight and passengers over the line to its northern terminus, it became necessary to run its trains over the track of appellee, and also to have the use of a rail to be placed and maintained between the rails of appellee's track and thus furnish a narrow gauge. To meet this necessity this contract was made.   By its provision the lessee was given the right to use the track of appellee and the single rail furnished by the lessee (evidently intended for its exclusive use), for the term of five years at a stipulated minimum compensation of $25 per day, to be paid appellee monthly after July 1, 1873.   The use of the track contemplated by both parties was for the purpose of enabling appellant to carry passengers and freight for hire on its trains running upon the narrow gauge track constructed by putting in said single rail on appellee's right of way. To exercise the right to carry on such traffic, the use of appellee's franchise was necessarily given, because without this, appellant could not lawfully so carry on its business as a common carrier over appellee's road.   City of Chicago v. Evans, 24 Ill. 52.

It thus appears by the record that the use of appellee's right of way and the exclusive use of the single rail attached to the soil was given by the contract, and this was a use of realty in legal contemplation, and the use of appellee's franchise was also intended to be and was included, which was a

use that could lawfully be demised. The general rule is, that not only lands and tenements, but franchises, can be demised. A railway company may lease its franchise and property by authority of the Legislature. Taylor's Landlord and Tenant, 8th Ed., Sec. 17.

In Rohn et al. v. Harris et al., 130 Ill. 525, which was a proceeding for partition, it was held that a ferry franchise, while strictly speaking not real estate, partook so far of the nature thereof that it might be partitioned in the same manner as real property, citing 3 Kent, 458, 459, and Dundy v. Chambers, 23 Ill. 369, in which case the court held a ferry franchise could only be transferred in accordance with the provisions of the statute of conveyances. We perceive no difference between the franchise whereby the right is given a ferry company to exact and collect toll for the transportation of passengers and property over water, and the franchise whereby the right is given to a railroad company to exact and collect compensation for the transportation of passengers and property over the land, so far as the matter of conveyance or leasing is concerned.

The record discloses that the lessee company entered and held under this lease until December 6, 1877, when the receiver took charge of and operated its road over and upon this narrow gauge track while the lease was still in force and before the expiration of the five years, and continued such use and operation after such term expired until he turned over the possession of all the lessee's property, including the track, mentioned in the lease on February 1, 1882, to appellant, and paid as rent $333.33 each month, which the lessor received and receipted for only on account and not in full, refusing at all times to reduce the rent, or make a new contract. Smithers knew all this, and if he did not wish to pay the full amount of rent reserved he should have quit the use. He could not as receiver enter under this contract and continue to use and occupy the premises as he did, and without the consent of the lessor either repudiate or change the terms of the contract. Higgins v. Halligan, 46 Ill. 173; Griffin v. Knisely, 75 Ill. 411.

On February 1, 1882, appellant, as grantee in the deeds of the trustees and receiver, entered into possession of, and from that time continued to use and occupy and run its trains over the same track, and pay rent therefor in the same manner the receiver did; accepting without objection receipts on account and not in full, until it terminated the contract, August 31, 1883, by giving the notice therein provided for.   The evidence shows, as we understand it, that the relation of landlord and tenant between appellee and appellant existed, and aside from its legal liability as assignee of a lessee, holding over, to pay the rent reserved by the terms of the lease, the proof also shows that in fact appellant used the track, right of way, and franchise of appellee under and by virtue of the contract, and it was bound to pay the rent according to the terms thereof. The lease was executed in duplicate, one being retained by each party.   Smithers evidently found the one kept by the lessee, because he refers to it in his testimony as the old contract.   Hamilton (appellant's superintendent) says he had charge of the lessee's property for the receiver, and most probably had seen it.   He testified he knew about the pay. ment of rent during the receivership.   He paid it.   The monthly sums paid were the same in amount and paid in the same manner during the time appellant continued in possession. Thomas, appellee's cashier, testified that monthly statements, charging appellant with rent at the rate of $25 per day, were transmitted to it or its officials, and that he in person presented such a statement for the rent of May, 1882, to appellant's cashier in June of that year.   That when he went to collect the rent monthly, at the appellant's office, he would be first presented with the voucher for a month's rent at the rate of $333.33 per month, with a receipt for that sum in payment attached, which he would refuse to sign, but would sign and deliver a receipt for that amount *on account,* which was accepted.   The superintendent says he *made out* this form of voucher and that appellee's officer would attach the receipt for $333.33.   He knew then the voucher and receipt in full, prepared by him, was not signed by appellee's officer, and the receipt which was so signed and given was itself a notice to

him that a larger sum was claimed for the month's rent by appellee, and that the sum of $25 per day was charged in the monthly statements transmitted to appellant's officials, which he says were not *presented to him;* but the cashier, to whom one at least was presented, as Thomas says, was not introduced to deny having received the same. But, in addition to all this, the official correspondence between Hamilton, superintendent for appellant, and Hill, superintendent for appellee, conclusively shows that both understood appellant had been and was using and occupying the demised premises under and by virtue of this lease, and not otherwise.

On May 30, 1883, Hamilton, by his letter of that date, advises Hill that appellant would not require the use of appellee's road after May 31st. On June 1, 1883, Hill replies to this: "I have your letter of May 30, 1883, advising me you will not require the use of this road after May 31, 1883. My understanding of *the agreement under which your company has used this road,* is, that it requires ninety days notice to terminate it, and I shall so construe your notice." Hamilton's understanding is the same, evidently. He does not reply as he would have done if he understood the old contract, reserving a minimum rent of $25 per day, was not binding on appellant, but continues to use and occupy the demised premises for it, without further correspondence, until August 29, 1883, when he writes to Hill, informing him appellant had at last gotten on its own track between East St Louis and South Junction, and had no longer use for appellee's road between those points; that the ninety days claimed by Hill would expire the next Friday, and he desired to take up *the rail of appellant* as soon as possible. The right to take up this rail is given only by the lease, and the notice required to terminate the contract is one of the provisions thereof. The remarks made concerning the refusal of Smithers to pay the full rent demanded will apply to the like refusal of appellant. Having availed itself of all the rights and benefits it acquired by the lease, under the facts proven it is liable for the rent. The damages assessed were not excessive. Appellant used and occupied the demised premises for a period of 577 days,

and paid $6,333.65. The court properly found appellant liable to pay the minimum rental of $25 per day, amounting to $14,425. Deducting payments made, a balance of $8,091.35 remained unpaid on September 10, 1883, and interest added at six per cent on such balance from that date to September 17, 1889, the date of trial, which was properly allowed, makes a sum greater than $11,004.64, the amount of judgment.

We think the judgment was warranted by the evidence, and it is affirmed.

*Judgment affirmed.*