# JAMES BLAKE

## v.

## JOSEPH A. KURRUS.

*Landlord and Tenant—Lease—Agreement for—Conditions—Breach—Evidence—Damages.*

A person in possession of real estate under a written agreement for a lease for a term longer than one year, occupies under a verbal leasing within the statute of frauds, and his tenancy is one from month to month.

[Opinion filed October 27, 1891.]

IN ERROR to the Circuit Court of St. Clair County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. F. G. COCKRELL and ALEXANDER FLANNIGAN, for plaintiff in error.

Messrs. DILL & SCHAEFER and E. R. DAVIS, for defendant in error.

1.   The plaintiff in error repudiates the lease made between Persall and Kurrus, and insists that his rights are to be determined by the writing of October 13, 1888.  He assumes that this writing is the lease, and that under it he had the unrestricted right to carry on, in the premises, any business he might desire to prosecute.   This writing is not a lease; it is only an agreement for a lease.   Griffin v. Knisely, 75 Ill. 411.   Taylor, Landlord and Tenant, Sec. 40, says:  " Wherever, therefore, the instrument makes the demise dependent on a condition or stipulation yet to be performed, it operates as an agreement only."

At the date of this writing (Oct. 13, 1888) the building was yet to be erected; it was not to be completed until January 1, 1889, hence it was dependent on a stipulation yet to be performed; consequently it was not a lease, but a mere agreement for a lease.   It was not treated by the parties as a lease, and

it was not assigned to plaintiff in error. Plaintiff in error having repudiated the Persall lease, and the writing of October 13, 1888, not being a lease, what then were his rights in the premises? Manifestly those of a tenant from month to month. The case of Creighton v. Sanders, 89 Ill. 543, settles this matter beyond controversy. His tenancy could have been terminated by a month's notice. Part performance does not prevail at law. Dougherty v. Catlett, 129 Ill. 431.

2. This property was leased for a specific purpose, namely, that of keeping a feed store and sale stable. Blake had no right to run a livery or boarding stable. Such, unquestionably, was the understanding. Kurrus himself having a livery stable just across the street, never consented that the property in controversy should be used as a livery stable. Blake persisted in violating his lease, and when sued in forcible detainer, instead of defending his position, he voluntarily vacated the premises. It is true, he insists that Kurrus had cut off the water supply pipes, and he therefore had the right to abandon the premises. He bases his action on the assumption that it was the duty of Kurrus to furnish him water supply pipes. Bearing in mind the fact that Blake claims all his rights under the writing of October 13, 1888, the question arises, upon what evidence does Blake insist that it was the duty of Kurrus to furnish water supply pipes? This writing is silent on this subject.

An agreement can not rest partly in writing and partly in parol. Marshall v. Gridley, 46 Ill. 247. This writing does not oblige Kurrus to furnish the pipes. The same is true of the Persall lease, and no witness testified that it was the duty of Kurrus to furnish these pipes. There is no evidence whatever that Kurrus ever agreed to allow his water supply pipes to be used by Blake. All that can be said in favor of Blake is that the former tenants procured their water supply through a pipe from an adjoining room owned by Kurrus, and that Blake had also procured his water in this way; but there is not a particle of evidence in this record that it was Kurrus' duty to furnish this pipe. He had not agreed to do it, and was not bound to do it. Whatever he did in this respect was a mere

gratuity or permission which he had the right at any time to withdraw.

3.    The only theory upon which plaintiff in error can maintain his suit is that he was evicted from the premises. Conceding, which we do only for argument, that it was the duty of Kurrus to furnish the supply pipe, and that he wilfully closed it off—is this an eviction of the plaintiff in error? We insist that it is not.

In Morris v. Tillson, 81 Ill. 623, the court says: "The rule laid down in Hayner v. Smith, 63 Ill. 430, Lynch v. Baldwin, 69 Ill. 210, and Walker v. Tucker, 70 Ill. 528, is, that acts by the landlord, in interference with the tenant's possession, to constitute an eviction, must clearly indicate an intention on the part of the landlord that the tenant shall no longer continue to hold the premises."

There is no evidence that Kurrus agreed to furnish the water supply, and there is no evidence that he turned it off.

In addition to this, the evidence is that Blake could easily have procured water from other sources, but he made no effort whatever to do it. But conceding all that is claimed, we insist that the acts complained of would not amount to an eviction; at most they would only amount to a mere trespass.

4.    After the plaintiff rested, we asked the Circuit Court, Judge Altgeld presiding, to instruct the jury to find for the defendant. We then thought, and now think, the plaintiff showed no cause of action, and that the instruction should have been given. Was there an eviction? If not, this instruction should have been given. Perhaps, as was said in Hayner's case, 63 Ill. 435, this is a question " to be decided by the jury." But we insist that there was an utter failure of evidence on this point.

SAMPLE, J.    The defendant, Kurrus, having in process of construction in East St. Louis, a brick building, entered into following contract with Levy and Persall to lease the same to them:

" We, the undersigned, agree to lease of Joseph A. Kurrus, of East St. Louis, Ills., a brick building to be erected on lot

14, block 172, town of East St. Louis, in the city of East St. Louis, Illinois. The building to be 28 feet by 70 feet and to be ready for use on or before January 1, 1889, for a term of three years, with a privilege of five years, at a rental of $275 per annum.

"Joseph Levy,
"S. E. Persall.

" Dated Oct. 13, 1888.".

Possession was taken by Levy and Persall about January 1, 1889, of said building, who used it for the purpose of keeping horses and feed for horses and occasionally they hired out some of the horses so kept by them. At the expiration of about one year, Persall bought Levy's interest in the business and thereafter ran the same until about the 15th day of February, 1890, when he sold out to Blake, the plaintiff, with the consent of the defendant, and indorsed the written contract to Blake, who took possession of the premises. Prior to this time and before Persall bought out Levy, Persall had asked Kurrus to make out a lease of the premises to him in accordance with the contract, which Kurrus had agreed to do but had neglected it, until shortly after Blake took possession, when the lease was made out and signed by Persall, which, being made out in duplicate, was presented by Persall to Blake for acceptance, but refused, just for what reason is not made clear, without it was that the lease contained provisions not in the original contract for leasing. This lease was dated back to January 1, 1890, and ran for a period of two years from that date, at a rental of $275 per year and provided that it was to be used for a feed store and sale stable and for no other purpose, without the written consent of lessor. This was what it was used for by the original parties.

The defendant had a livery stable right across the way and did not want to encourage competition with his business. The defendant, evidently understanding that Blake was in possession under the lease with Persall, he not having been notified of Blake's refusal to accept such lease, on the 19th day of March, 1890, notified Blake that he would terminate the lease for his default in keeping a feed stable instead of a feed store and sale stable.

He also, on the 3d day of April, 1890, notified Blake that he was in default in the payment of rent and unless paid before the 9th day of April, he would terminate the lease.

After this the water was shut off from the building, whereupon, on the 7th day of April, 1890, Blake made written demand on Kurrus to turn on the water or supply another system, or he would vacate the premises and hold him responsible for damages. The water not being turned on, Blake, on the 15th day of April, 1890, served written notice on Kurrus, that in consequence of his wilful interference and annoyance in turning off the water necessary to the use of the premises, he would vacate the premises and hold him responsible for damages. Whereupon this suit was brought, and on trial the jury awarded him damages in the sum of $50, which, not being satisfactory, he moved for a new trial, which was overruled and judgment entered on the verdict, from which this appeal is prosecuted and numerous errors assigned.

The main ground of complaint is that the plaintiff was deprived by the defendant of the use of the premises for the residue of the unexpired term for which Levy and Persall had contracted for a lease, and that in this view the damages are insignificant that were awarded the plaintiff. If this was the proper view to take of the case, we would unhesitatingly reverse and remand it, but we take a different view.

The plaintiff, notwithstanding the defendant consented to the assignment of the contract with Persall and Levy to Blake and his occupancy of the premises, did not obtain any additional or other rights thereby than those conferred by that contract on Persall and Levy. By that contract it will be observed that they *agreed to lease* of Kurrus, the premises for a certain time at a certain rental. It does not purport on its face to be other than an agreement for a lease, and it was not abrogated by any other agreement. It was regarded by them, and each of them, as in full force, and the plaintiff still so regarded it when he took possession, only he made the mistake in supposing that it was a lease instead of an agreement for a lease. It is evident that Persall did not understand it to be a lease or he would not have signed the lease

of date January 1, 1890, agreeing to pay the rent. Blake refused to accept this lease, and claimed his rights were under the original contract, which, as seen, being merely an agreement for a lease, made his occupancy one under a verbal leasing and for a period longer than one year, and therefore within the statute of frauds, which, under the authority of Creighton v. Sanders, 89 Ill. 543, became only a tenancy from month to month. Hence whatever damages he sustained was under such a leasing. The defendant, therefore, having the right to terminate the lease or occupancy at the end of any month, we can not say that the damages allowed were not compensatory. The plaintiff testified that he had put in a telephone that cost him $50, had bought hose that cost him $7.50 and been to some other expense, that in all amounted to $115 or $120; that he had three regular customers and several transient ones; that he had sold six or eight horses and two or three mules. His telephone and hose would not be an entire loss to him, and his profits in the business were evidently not very large.

It will be observed that the court below gave instructions on the theory that the original contract for a lease, was a lease, and authorized the jury to consider damages, if any, for the eviction, for a period of one year and eight months. This was a more liberal instruction than the plaintiff was entitled to. It would subserve no interest to review all the errors assigned. We think substantial justice has been done, and therefore affirm the judgment.

*Judgment affirmed.*