**Staackman, Horschitz & Company for use of Gustav E. Beerly, Appellees, v. George B. Cary, Appellant.**

## Gen. No. 21,334.

1. MUNICIPAL COURT OF CHICAGO, § 13*—*when statement of claim in action to recover for breach of contract states cause of action.* In an action to recover for breach of a contract to sell and deliver a quantity of linseed cake, where plaintiff's statement of claim alleged that defendant telegraphed plaintiff in code: "Please make us firm offer P. W. cif Antwerp 500 T. March or first half April;" that plaintiff replied by code telegram: "Make you firm offer 1200 T. March or April cif Antwerp at Frs. 16. Crushers or bankers guaranteeing contract;" that defendant replied by code telegram: "We accept your offer cif Antwerp 1200 T. March or April at Frs. 16," *held* that the statement of claim stated a cause of action, it appearing that the letters "P. W." as used in the telegram meant "prime western linseed cake," and that the word "firm" similarly used meant "positive."

2. CONTRACTS, § 197*—*when construed in light of usages of trade and of telegrams.* Where defendant telegraphed to plaintiff asking an offer for the sale and delivery of a named quantity of goods, to which plaintiff replied by code telegram making an offer for a larger quantity, which defendant accepted by code telegram, a contract was made to be interpreted in the light of the usages of the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

trade in which the parties were engaged, and the previous telegrams between the parties. .

3. CONTRACTS, § 44*—*how offer must be accepted.* An offer to make a contract must be accepted as made, and a modified acceptance is a new offer which cannot constitute a contract until accepted unconditionally.

4. CONTRACTS, § 42*—*what constitutes acceptance of offer by telegraph.* Where an offer to make a contract is sent by telegraph, a telegram in reply saying "we accept," followed by enough of the offer to identify it, is an acceptance of the offer in its entirety.

5. CONTRACTS, § 52*—*when stipulation that informal agreement shall be reduced to writing does not prevent agreement taking effect.* The mere fact that parties intended or stipulated that an informal agreement, either oral or written, should later be reduced to writing will not prevent the informal agreement from taking effect at once, the question whether such agreement does so take effect depending on the intention of the parties.

6. CONTRACTS, § 52*—*when requirement that contract be reduced to writing waived.* In an action to recover for breach of a contract for the sale and delivery of linseed cake, where the contract was made by telegraph, the right of defendant to insist that the contract be reduced to writing, *held* waived by sending a later telegram requesting an extension of the time for delivery fixed by the contract, such request being a recognition of liability on the contract.

7. TRIAL, § 163*—*when place of delivery under contract question of law.* In case of a breach of a written contract for the sale and delivery of linseed cake, the question of the place of delivery is a question of law to be determined by the court.

8. DAMAGES, § 191*—*when question of what market shall be taken in assessment of damages for court.* . In case of breach of a contract for the sale and delivery of linseed cake, the question of what market shall be taken in assessing damages is a question of law for the court.

9. EVIDENCE, § 461*—*when evidence as to legal aspect of document to be disregarded.* Testimony as to the legal aspect of a particular kind of contract is merely testimony as to the law of the case and must be disregarded.

10. SALES, § 71*—*what constitutes a c. i. f. contract.* A "c. i. f." contract is a contract for the sale and delivery of goods at a price to cover the cost of freight and insurance, payment to be made on the receipt of shipping documents by the acceptance of a draft for the amount of the contract price.

11. SALES, § 122*—*what is place of delivery under contract for foreign shipment.* Where the vendor in a c. i. f. contract from Chi-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cago to Antwerp knows that the goods are intended for Antwerp, the place of delivery under the contract is Antwerp, and not the point on the American coast where the goods are to be placed on shipboard.

12. SALES, § 376*—*what is measure of damages for breach of contract of sale.* If, at the time of making a contract of sale, a vendor knows that the goods are to be sold in another market, his liability is measured by adding to the contract price at the agreed time and place the cost of transportation to such market, less the price at such market at the time the goods would have reached their destination had there been no breach.

13. SALES, § 376*—*what is measure of damages for breach of contract for foreign shipment of goods.* In an action to recover for breach of a contract requiring the shipment of goods from New York to Antwerp on April 30th, at the latest, plaintiff is entitled to have damages assessed on the basis of the market price of the goods at Antwerp on May 14th, at which time a vessel sailing from the Atlantic coast April 30th, would usually arrive, and is not limited to nominal damages because there is no evidence of the market price at Antwerp on April 30th, of goods to arrive May 14th, plaintiff having the right to wait until May 14th and to regard the contract as prospectively binding until that time.

Appeal from the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed January 31, 1916. *Certiorari* denied by Supreme Court (making opinion final).

CHYTRAUS, HEALY & FROST and JOHN PETER BARNES, for appellant.

GUSTAV E. BEERLY, for appellee; ELLIS S. CHESBROUGH, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

Plaintiffs, Staackman, Horschitz & Company, were dealers in linseed cake at Antwerp. Defendant Cary was a broker dealing in such cake at Chicago. He had made twenty or thirty sales of the cake to plaintiffs at a price "to cover cost, insurance and freight, shipping the same c. i. f. Antwerp." March 7, 1913, defend-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ant telegraphed plaintiffs in code: "Please make us firm offer P. W." (prime western linseed cake) "cif Antwerp 500 T. March or first half April," and telegraphed a similar request March 8th. March 13th plaintiffs at Antwerp telegraphed in code an offer to defendant in Chicago as follows: "Make you firm offer 1200 T. March or April cif Antwerp at Frs. 16. Crushers or bankers guaranteeing contract," to which defendant replied March 14th by telegraph, also in code: "We accept your offer cif Antwerp 1200 T. March or April at Frs. 16." These telegrams, together with a large number of other telegrams, forming the proposed contract, are set forth in the statement of claim. Defendant moved to strike the statement of claim from the files. His motion was denied, and he electing to stand by his motion, an order was entered defaulting him for failure to file an affidavit of merits. While the statement of claim is certainly not a model to be followed, we think it states a cause of action, and the court did not err in refusing to strike it from the files. The defendant having been defaulted, the only question submitted was the amount of plaintiffs' damages. The word "firm" in the plaintiffs' telegram means positive, and is used by both parties in other code telegrams in that sense.

The telegrams made a contract between the parties to be interpreted in the light of the usages of trade and the previous telegrams between the parties. It is true that an offer must be accepted as made, for any modified acceptance is but a new offer and cannot be the basis of a contract until it in terms has been accepted unconditionally. The words "we accept" in defendant's telegram of March 14th, followed by enough of the offer to identify it, was an acceptance of the offer in its entirety. The mere fact that the reduction of an informal agreement, oral or written, by a formal written one was contemplated or stipulated for, does not prevent the former from taking immediate effect.

The question whether it does or not depends on what the parties intended. *Scott v. Fowler*, 227 Ill. 104, 108; *Stover v. Flack*, 30 N. Y. 64.

If it be conceded that defendant might have insisted on a formal contract, it was competent for him to waive it, and his request by telegram of March 29th, "Owing floods railroads paralyzed; kindly extend contract April May," was a recognition of his liability on a contract made by the telegrams of March 13th and 14th. It was for the court to determine as a question of law the place of delivery, and in case of a breach, what market should be taken in estimating plaintiff's damages. A large part of defendant's testimony and that of some of his witnesses consists of their views of the legal aspect of a c. i. f. contract; but such testimony was but testimony as to the law of the case and must be disregarded. There is a standard definition of that contract in the opinion of Blackburn, Justice, one of the judges called in by the House of Lords in *Ireland v. Livingston*, 5 Eng. & Irish Appeals, 395:

"The terms at a price to cover cost, freight and insurance, payment by acceptance on receiving shipping documents, are very usual and are perfectly understood in practice. The invoice is made out debiting the consignee with the agreed price (or the actual cost and commission, with the premiums of insurance, and the freight, as the case may be), and giving him credit for the amount of the freight which he will have to pay to the ship owner on actual delivery, and for the balance a draft is drawn on the consignee which he is bound to accept (if the shipment be in conformity with his contract) on having handed to him the charter party, bill of lading and policy of insurance. Should the ship arrive with the goods on board he will have to pay the freight, which will make up the amount he has engaged to pay. Should the goods not be delivered in consequence of a peril of the sea, he is not called on to pay the freight, and he will recover the amount of his interest in the goods under the policy. If the non-

delivery is in consequence of some misconduct on the part of the master or mariners, not covered by the policy, he will recover it from the ship owner. In substance, therefore, the consignee pays, though in a different manner, the same price as if the goods had been bought and shipped to him in the ordinary way.''

This statement was adopted as a correct statement of the law in Benjamin on Sales (7th Ed.) 571.

The contention of appellant that in a c. i. f. contract the place of delivery is the point where the article sold was placed on shipboard, and that the market price at that place is to be taken in estimating damages in case of breach, cannot be sustained. The place of delivery, as has been said, was Antwerp, not the point on the American coast where the cake was to be placed on shipboard, and the defendant knew that the cake was intended for Antwerp. *Stroms Bruks Aktie Bolag v. Hutchinson*, L. R., A. C., 515; Sutherland on Damages (3rd Ed.) sec. 653.

"If the vendor knows when he makes his contract that the property is to be sold in another market his liability is measured by adding to the contract price at the agreed time and place of delivery the cost of transporting the property to such market, less the price there at the time it would have reached its destination if there had been no breach.'' *Van Arsdale v. Rundel*, 82 Ill. 63.

In *Durst v. Burton*, 47 N. Y. 167, an action of fraud in the sale of cheese made at Frankfort, New York, and purchased there to be forwarded to and sold in New York, it was said, page 174:

"The place of delivery was Frankfort, but by the terms of the contract, New York was the market to which it was to be forwarded, and where it was to be sold, and the market price there may be regarded as within the contemplation of the parties.''

To the same effect are: *Boyd v. L. H. Quinn Co.*, 17 Misc. (N. Y.) 278; *Wallingford v. Kaiser*, 191 N. Y. 392; *Cockburn v. Ashland Lumber Co.*, 54 Wis. 619; *Louis Cook Mfg. Co. v. Randall & Dickey*, 62 Iowa 244.

The contention that plaintiff was entitled to nominal damages only because the market price at Antwerp on April 30th of cake to arrive May 14th was not shown, is without merit. A vessel sailing from the American Atlantic seaboard April 30th would arrive in Antwerp May 14th, and plaintiff had the right to wait until that time, holding the contract as prospectively binding. *Roehm v. Horst,* 178 U. S. 1; *Long v. Conklin,* 75 Ill. 32.

Conceding the plaintiff was entitled to the benefit of the market price at Antwerp on May 14th, the proof is ample to support the award of damages.

The finding of the Municipal Court is correct and the judgment is affirmed.

*Affirmed.*