## Seaver Amusement Company, Appellee, v. J. E. Saxe and Thomas Saxe, copartners, Appellants.

### Gen. No. 23,432.

1. LANDLORD AND TENANT, § 6*—*when instrument deemed not to be lease.* Where from the express phraseology of a written instrument it plainly appears that it was not the intention of the parties that it should operate as a lease, it will not be held to be such, even though it provides that immediate possession may be taken under it.

2. LANDLORD AND TENANT, § 6*—*when agreement relating to leasing of property deemed not to be lease.* Where an agreement relative to the leasing of property expressly provided for and contemplated the execution of a formal lease and the liability for rent thereunder was not to commence until a later date, the instrument will not be held to be a lease, in the absence of any evidence of estoppel or contrary contemporaneous construction by the parties, even though it provided for immediate possession of the premises.

3. LANDLORD AND TENANT, § 94*—*when tenancy from month to month arises.* Where a tenant goes into possession and pays monthly rent under a parol lease which, though in violation of the Statute of Frauds, provides for the payment of a monthly rent, a tenancy from month to month arises.

4. LANDLORD AND TENANT, § 89*—*when tenancy from year to year created.* Where one goes into possession under a parol lease by which the reservation of rent is annual, a tenancy from year to year is created, even though the agreement provides for a payment of one-twelfth of the annual rental each month.

5. LANDLORD AND TENANT, § 6*—*how relations of parties determined where possession taken under agreement for lease.* Where possession is taken under an agreement for a lease without any lease having been actually executed, the relations of the parties are to be determined by their parol understanding at that time and their subsequent conduct pursuant thereto, and the terms of such agreement will govern except so far as they conflict with the Statute of Frauds.

6. LANDLORD AND TENANT, § 274a*—*when tenant may not recover deposit.* Where an agreement for a yearly lease provides for a deposit by the lessee on the execution of the lease to guarantee its performance which shall be used by the lessor in discharge of the last quarter of the first year term, and no lease is executed but the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
    Vol. CCX 19

lessee enters and takes possession under a parol agreement for a yearly rental, the deposit cannot be recovered back by the lessee, but may be applied by the lessor towards the payment of a quarter of the rent, on a breach of the parol lease by the lessee.

Appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed April 24, 1918.

STANSBURY & CHARLES, for appellants.

WHEELOCK, NEWEY & MACKENZIE, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

The Seaver Amusement Company, the appellee, lessee of the Hippodrome Theater in the City of Peoria, claiming that appellants, J. E. Saxe and Thomas Saxe, copartners, were liable for certain rent as sublessees, brought suit in the Municipal Court and recovered judgment in the sum of $3,333.33 and costs. The statement of claim set up (1) that the appellants were liable upon a formal lease for one year; (2) that they were liable for use and occupation; and (3) that they were liable for rent for certain months as the result of certain mutual acts of the parties.

The defense of the appellants was that the tenancy was from month to month; that they abandoned the premises and so notified the appellee in writing, and that there was no further rent due.

In the early part of August, 1914, one Robinson, secretary and treasurer and vice president of the appellee, began negotiations with Thomas Saxe and one Wright in Peoria in regard to the leasing of the Hippodrome Theater. Saxe looked over the theater property and intimated that he would confer with his brother, John Saxe, who later went to Peoria. On August 5, 1914, an elaborate written contract was signed by both parties. It recited, among other things, "That whereas, the parties hereto have on this day

and date agreed upon the terms for a lease of a certain theater. * * * Whereas, for the purpose of a memorandum for a lease about to be executed * * * it is agreed as follows: that the Seaver Amusement Company * * * agrees to execute and deliver * * * a certain lease. * * * It is further agreed that the lease shall provide that the Saxes * * *. It is further agreed that said lease shall provide for carrying out," etc. It further recited that unless the contract of August 5, 1914, was executed by a given time, appellee should have the right to cancel it without further notice. Also, that if the appellants should accept the contract it should be delivered, together with $2,500, to the appellee by noon, Monday, August 10, 1914. The contract also provided that if the appellants executed it "the corporation (appellee) obligates itself to make the lease in substantially the terms herein contained." The rental for the first year was fixed at $10,000. At the time the contract was made, August 5, 1914, the appellants paid to the appellee $2,500, and at the same time one of the Saxes told Robinson that E. P. Churchill would be the manager of the theater. On August 15, 1914, Churchill took possession of the theater and proceeded to install furniture and fixtures. Churchill, as manager for appellants, opened the theater on September 1, 1914, and, it is claimed by appellee, continued to operate it from then until June 22, 1915. The rent was paid in amounts of $888.88 for the months of September, October, November and December, 1914, and January, 1915, and the appellee applied the $2,500 deposit for the months of June, July and August, 1915; that no rent being paid for the months of February, March, April and May, 1915, the appellee retook possession of the premises on September 1, 1915. The evidence of Robinson of the appellee is to the effect that Thomas Saxe told him, about December 18, 1914, that they, meaning appellants, had decided that they had lost about all

the money they cared to lose in the Hippodrome Theater, and were going to allow Mr. Churchill to manage it and run it as he saw fit, and they would continue to pay the rent. Certain correspondence between appellants and Churchill was offered in evidence which shows that appellants had made some arrangements with Churchill by which the latter had taken over their interest in the theater. In a letter of December 15, 1914, to Churchill from appellants, occurs the language: "We would not be obliged to pay this theater tax if the theater was closed, and inasmuch as you are conducting the house we feel that we should make this charge against your account." On January 2, 1915, appellants wrote to Churchill that they were sending their representative, one Wright, to investigate, and stated that they authorized him "to take such steps as he deems necessary to protect our interests." On January 30, 1915, appellants wrote appellee that they would not be able to send the rent for February until the middle of that month. It was admitted by counsel for appellants that Churchill was in possession of the theater "as the defendants' manager up to February 17, 1915."

The appellants took possession of the theater August 10, 1914. Churchill took possession for them as manager and, it is admitted, remained in possession as their manager until November 21 or 22, 1914. The period of Churchill's hiring by appellants was indefinite. On November 21 or 22, 1914, his relations as manager for the appellants were discontinued and he undertook to operate the theater on his own account, and for the period during which the appellants "decided to pay the rent and keep the theater" he agreed to pay as his rental for so doing, to the defendants, a sum equal to 50 per cent. of the profits. Between August 10, 1914 and November 22, 1914, appellants paid Churchill a weekly salary for his services as manager of the Hippodrome Theater. Churchill tes-

tified that some time in March, 1915, he had a talk with Robinson and one Yorkin; that they said that appellants had given them notice that they would not pay the rent any longer; that "not being an occupant of the building they would look to me for it, and expect I would help them out in some way on it, as their rent was due"; that he "refused to give them any"; that he "was not then employed by the Saxes." On February 17, 1915, appellants, by letter, notified the appellee that they, on that date, abandoned to appellee the property and that appellee might "take possession of the said premises forthwith"; that "all agreements for releasing the above described premises and all oral agreements of lease between you and the Saxes are canceled after this date." In that letter the appellants stated, further, that appellee might show it (said letter) to Churchill "who has been operating the theater, claiming some kind of an agreement with the Saxes so to do, as evidence that he is no longer to withhold the possession of the premises from you if you demand the surrender of them by him to you, so far as the Saxes are concerned." The witness Robinson testified that the conversation related by Churchill as having taken place some time about the middle of March did not occur; that he had no talk with him regarding the rent. Churchill surrendered the premises to appellee on June 15, 1915. The appellee applied the $2,500, which was paid to it at the time of the signing of the contract, August 5, 1914, for the months of June, July and August, 1915, that was for one-quarter of a year at an annual rate of $10,000, and as the rent was paid by appellants for the months of September, October, November and December, 1914, and January, 1915, there remained unpaid the rent for the period beginning February 1, 1915, and ending May 31, 1915, being the sum of $3,333.33, or one-quarter of a year at $10,000 per year. The court without a jury found that the appellee was entitled to damages in the sum of

$3,333.33, and, accordingly, entered judgment for that amount.

The following questions arise: (1) Was the contract of August 5, 1914, a lease? (2) Assuming the contract of August 5, 1914, was not a lease, were appellants, by implication, tenants from year to year? (3) Assuming the contract of August 5, 1914, not to be a lease and that appellants were not tenants from year to year, were they liable for use and occupation at $833.33, per month, for the months of February, March, April and May, 1915? (4) Were the appellants in actual possession of the premises during February, March, April and May, 1915, through their subtenant Churchill, and, therefore, liable as tenants from month to month? (5) Was appellee justified in applying the deposit of $2,500 on the rent accruing for the months of June, July and August, 1915?

(1) Was the written contract of August 5, 1914, a lease? It certainly has some of the qualities of a lease, and yet, on the other hand, it contains a number of definite statements to the effect that it was intended merely as an agreement for a lease. It recites at the outset—and the words are of great significance—that it was made "for the purpose of a memorandum for a lease about to be executed." Further, that said lease is to be dated September 1, 1914; that is, *in futuro;* that the appellants "agree, upon the execution of the lease," to make a certain deposit; that "the lease shall provide that the said Saxes shall make such changes in and about the buildings so demised as they shall desire," etc.; "that said lease shall provide for the carrying out of the provisions of the lease of the corporation with Charles J. Off, so far as the same shall be applicable here"; that "if this contract shall not be executed by the said J. E. and Thomas Saxe * * * the corporation shall have the right to annul and cancel this contract"; that "in the event that the said J. E. Saxe and Thomas Saxe shall execute, accept and

Seaver Amusement Co. v. Saxe et al., 210 Ill. App. 289.

deliver this contract as herein provided, that the corporation obligates itself to make the lease in substantially the terms herein contained." Where from the express phraseology of the written instrument it plainly appears that it was not the intention of the parties that it should operate as a lease, it is the law that even though it provides that the prospective lessee may take immediate possession, such an agreement is not a lease. Taylor, Landlord and Tenant, sec. 40. The instant case is, in its facts, quite distinguishable from *E. De Lue & Co. v. Spear,* 192 Ill. App. 254. In the latter case the memorandum of agreement, upon a careful analysis, is shown to contain, by the use of the words, "I, D. D. Spear, hereby agree to rent," a promise to rent *in præsenti* the premises in question; and, although it contains the further words, "and sign a lease for same," the latter does not in any way detract from the binding promise already made. In the latter case the lessee agreed to rent the premises at once and was to sign a lease afterwards; whereas, in the instant case, although immediate possession was provided for, and the liability for rent was not to commence until September 1, 1914, the written agreement reiterated in at least six different paragraphs that it was merely a contract for the execution of a future lease. The conduct of the parties, having reference particularly to the words used by the appellants in the letters of December 26, 1914, January 2 and January 6, 1915, does not help much in the interpretation of the written agreement. It is an elaborate document and contains many provisions, and seemingly alludes to all that might be considered material in a finished lease, and yet, in the face of the repeated statements which it contains, that it is only an agreement for a lease, to hold it to be otherwise would be to transmute that which expressly and only lies in contract—without any evidence of estoppel and without any suggestive conduct in the nature of contemporaneous interpreta-

tion on the part of the makers—into a lease itself. We feel impelled, therefore, to conclude that the written agreement of August 5, 1914, which expressly provided for and contemplated the execution of a more formal document as a lease, did not constitute itself a written lease. *Lehigh & Wilkes-Barre Coal Co. v. Wright,* 177 Pa. St. 387.

(2) Assuming the contract of August 5, 1914, was not a lease, were appellants, by implication, tenants from year to year? There seems to be no doubt that it is the law in this State that where a tenant goes into possession and pays monthly rent under a parol lease, which, though in violation of the Statute of Frauds, provides for the payment of monthly rent, there arises a tenancy from month to month. In the case of *Brownwell v. Welch,* 91 Ill. 523, where the rent was payable "at $83.33⅓ per month"; in *Creighton v. Sanders,* 89 Ill. 543, where the words were, "For the term of five years from July 1, 1872, for $15 per month rent"; in *Warner v. Hale,* 65 Ill. 395, where the words were, "for one year, at a stipulated rent, payable monthly"; in *Hansen v. Stein,* 201 Ill. App. 501, where the term was "for a period of three years, at $125 per month"; in *Mollitor v. C. M. Thom Van Co.,* 118 Ill. App. 293, using the following words, "For a longer period than a year on a monthly rent payable monthly"; in *Donohue v. Chicago Bank Note Co.,* 37 Ill. App. 552, where the words used were, "for a term of three years, at a rental of $200 per month, payable monthly," it was held that a tenancy from month to month was created. In the case of *Blake v. Kurrus,* 41 Ill. App. 562, where the words were, "for a term of three years * * * at a rental of $275 per annum," it was held that a tenancy from month to month was created "under the authority of *Creighton v. Sanders,* 89 Ill. 543," etc. In the latter case, however, the court merely said that where the words were, "for $15 per month rent," the lease was from month to

Seaver Amusement Co. v. Saxe et al., 210 Ill. App. 289.

month. It will be seen, therefore, that *Creighton v. Sanders, supra,* does not support *Blake v. Kurrus, supra,* and that the latter case must be considered as contrary to the prevailing judgment of our courts.

By analogy, and with equal reason, it seems to be the law that where the reservation of rent is annual, there arises a tenancy from year to year. In Taylor's Landlord and Tenant (9th Ed.), vol. 1, sec. 55, the following language is used: "Since the time of the Year Books, however, the courts have treated a general occupation by permission, no time being fixed for its continuance, as a tenancy from year to year, whenever the reservation of rent or other circumstances indicated an agreement for an annual holding," etc. In *Herrell v. Sizeland,* 81 Ill. 457, the court said that: "The reservation of an annual rent is the leading circumstance that turns leases for uncertain terms into leases from year to year." Citing "4 Kent 114; *Cox v. Burt,* 15 E. C. L. 410; Adams on Ejectment, 120"; *Lithograph Bldg. Co. v. Watt,* 96 Ohio St. 74, 117 N. E. 25.

In the instant case, the agreement of August 5, 1914, pursuant to which appellants went into possession of the premises, provided that the rent should "be upon a basis of payment to the corporation (appellee) of ten thousand ($10,000) dollars the first year * * * the rentals to be paid in monthly periods, payable in advance," etc. We must, therefore, assume that when the appellants went into possession and paid $833.33 in each of the months of September, October, November, December, 1914 and in January, 1915, they were paying rent "upon a basis of payment to the corporation (appellee) of $10,000 per annum"; that the rent as paid was not considered a monthly rental, but each payment as a one-twelfth part of a total annual liability of $10,000. Having taken possession of the premises and paid rent on the yearly basis, obviously pursuant to the terms of the agreement for

a lease, we are of the opinion that a tenancy from year to year was thereby created. The contract of August 5, 1914, being merely an agreement for a lease, no written lease having been actually executed, the relations of the parties are determined by their parol understanding at that time, and their subsequent conduct pursuant thereto. One exception, however, must be noted, that is, that the term of the tenancy, as provided for in the written agreement, may not be considered on account of the Statute of Frauds. Having acted under the contract and created the relation of landlord and tenant, the terms of that contract will govern in so far as they do not conflict with the Statute of Frauds. In the instant case, by the terms of the written agreement, which must be considered as in the nature of a parol understanding, the rent was fixed at an annual rent, and it follows, therefore, that the tenancy must be considered as from year to year. No question (3) of *quantum meruit* for use and occupation, nor (4) of rent from month to month arises.

Considering all the circumstances, and particularly the understanding as to the annual rent to be paid, evidenced by the written contract for the lease, and followed by possession and payment of part of the rent on the basis of an annual rent of $10,000, we are of the opinion that a tenancy from year to year was created, and that the appellants were liable for the amount of rent remaining unpaid.

(5) As to the question involving the deposit of $2,500 which was made by the appellants to the appellee on August 5, 1914, contemporaneously with the acceptance and execution of the written agreement for a lease: The written contract of that date provided, "it is also further agreed that if the said Saxes shall accept this contract, they shall deliver the same, together with the $2,500 herein provided for," etc. The written agreement also provided, "In order to guarantee the performance of the agreement by the said

Seaver Amusement Co. v. Saxe et al., 210 Ill. App. 289.

Saxes for the first year * * * the said J. E. and Thomas Saxe agree, upon the execution of the lease, to deposit with the corporation the sum of $2,500 in cash, which shall be used in the discharge of the last quarter of the first year term, but they shall be entitled to interest on the same at the rate of 5 per cent. per annum.'' In accordance with the above provisions, appellants, on August 5, 1914, contemporaneously with the acceptance and execution of the written agreement, paid the sum of $2,500 to the appellee. It is claimed by the appellants that although the written agreement recited that the $2,500 should be used in the discharge of the last quarter of the contemplated term of one year, it was ''upon the assumption, express understanding and condition that a lease should be thereafter executed and delivered,'' and cases are cited to the effect that while the agreement remained executory, the money so paid may be recovered back. The record shows that the appellants made no demand for the return of the $2,500, and no claim in the nature of a set-off was made. Inasmuch as we have held that the tenancy was one from year to year at an annual rental of $10,000, and as the written agreement provided that the deposit of $2,500 ''shall be used in the discharge of the last quarter of the first year term,'' we are of the opinion that the appellee was justified in applying that deposit in payment of the rent for one-quarter of the annual rent of $10,000. In our opinion the evidence shows that the appellants were legally in possession of the premises until the 1st of September, 1915. The claim that the court erred in the exclusion of certain answers to interrogatories, we are of the opinion, is untenable.

Finding no error in the record the judgment is affirmed.

*Affirmed.*