# W. T. Grant Company, Appellant, v. Henry J. Jaeger et al., Appellees.

1. FORCIBLE ENTRY AND DETAINER—*praying appeal and fixing bond.* Section 19 of the Forcible Entry and Detainer Act (Cahill's Ill. St. ch. 57, ¶ 20) provides that the amount of the appeal bond in a forcible detainer action must be fixed by the justice of the peace who tries the case and that the appeal must be prayed for before that justice.

2. FORCIBLE ENTRY AND DETAINER—*waiver of rights to dismiss appeal for failure to file appeal with justice of peace.* The appellee, on an appeal from a judgment in justice's court in a forcible detainer action, by moving for a rule on appellants to file a good and sufficient bond and that in default thereof their appeal be dismissed, waived its right to have the appeal dismissed on the ground that the appeal bond was filed with the clerk of the circuit court instead of with the justice of the peace, and gave the circuit court jurisdiction of the case.

3. CONTRACTS—*correspondence as containing.* While a valid contract may be made by correspondence, care must be taken not to construe as an agreement letters which the parties intended only as preliminary negotiations.

4. CONTRACTS—*necessity that acceptance conform to offer.* To constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer, and if it contains new conditions there is no contract.

5. CONTRACTS—*necessity of reducing to writing and signing.* If the party sought to be charged by a contract made by correspondence neither had nor signified an intention to close the contract

until it was fully expressed in a written instrument and attested by signatures, he will not be bound until the matter is reduced to writing and the signatures affixed.

6. LANDLORD AND TENANT—*necessity that agreement for lease state commencement and duration of term.* An agreement for a lease must designate the length or duration of the term and state when it is to begin.

7. LANDLORD AND TENANT—*offer and acceptance of proposition to lease for new term as lease in form of old lease.* There is no presumption that an offer and acceptance of a proposition to lease a building for a new term were to constitute a new lease in the same form as the old one.

8. LANDLORD AND TENANT—*insufficiency of acceptance of offer to lease to constitute contract.* A statement in reply to an offer to lease a building that, "We have decided to and do accept your proposition, and will draft a lease containing the stipulations and conditions and will forward it to you for your approval and execution," was not an unqualified acceptance of the offer, but an acceptance subject to and in accordance with the provisions of the lease to be submitted for approval and execution and did not constitute a complete and binding contract.

9. LANDLORD AND TENANT—*insufficiency of correspondence to constitute lease.* Correspondence concerning a proposal to lease premises, which indicated an intention to accept the offer of the proposed lessee but provided for the further execution of a lease, was not a lease and, in the absence of any acts amounting to an estoppel, did not have the effect of a lease.

10. FORCIBLE ENTRY AND DETAINER—*rights of defendant claiming possession under negotiations for unexecuted lease.* Where written negotiations for the lease of a building indicated an intention that a formal lease should be drafted and executed, which was not done, and an action of forcible detainer was begun on the day following the expiration of the lease under which the tenants had been holding the premises, it cannot be contended that the tenants went into possession by virtue of the written negotiations or agreement for a lease nor that they were tenants from month to month.

11. FORCIBLE ENTRY AND DETAINER—*right of possession against one claiming under negotiations for lease where lease not executed.* Though correspondence between parties had amounted to an agreement to execute a lease for certain premises, if the lease under which one of the parties held the premises expired without a new lease having in fact been executed, the tenant was in wrongful possession and the lessor was entitled to maintain a suit for forcible detainer.

Appeal from the Circuit Court of St. Clair county; the Hon.

GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed March 24, 1922. Modified and refiled and rehearing denied September 14, 1922.

MAURICE V. JOYCE and ADOLPH & HENRY BLOCH, for appellant.

T. M. WEBB and KRAMER, KRAMER & CAMPBELL, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This suit is an action of forcible detainer brought by appellant, W. T. Grant Company, a Massachusetts corporation, before a justice of the peace against appellees, Henry J. Jaeger, Leader House Furnishing Company and East St. Louis House Furnishing Company, on the 14th day of May, 1920, to recover possession of certain business property known as No. 227 Collinsville Avenue, in the City of East St. Louis, Illinois. On the 19th day of May, 1920, judgment was rendered by the justice in favor of appellant for possession of the property in controversy and on that date the defendants prayed an appeal to the circuit court of St. Clair county and the amount of the appeal bond was fixed by the justice of the peace who tried the case at the sum of $4,000. On May 24, 1920, appellees presented to the clerk of said circuit court an appeal bond in the sum of $4,000 in accordance with the statutory form of bond prescribed in the Justice of the Peace Act for appeal to courts of record. This' bond did not contain the conditions prescribed in the Forcible Entry and Detainer Act and was not presented for approval of the justice of the peace who tried the case, but was filed with and approved by the clerk of the circuit court.

At the September term, 1920, of the circuit court, appellant, limiting its appearance, filed its motion to dismiss the appeal on the grounds that no appeal bond

had been taken or approved by or filed with the justice of the peace before whom said cause was tried, and that no legal appeal had been taken and perfected within the time required by law. The court denied this motion. Appellant then filed its motion asking the court to enter a rule on appellees to execute and file a good and sufficient bond in compliance with the provisions of section 19 of the Forcible Entry and Detainer Act [Cahill's Ill. St. ch. 57, ¶ 20], or in default thereof that the appeal be dismissed, setting forth that the appeal bond filed was wholly insufficient in form and in substance, in that it did not provide for the payment of all rent then due or that might become due or for the payment of all damages and loss which appellant might sustain. This motion was sustained by the court and appellees were required to file and did file such bond, in the sum of $10,000. On trial of the case before a jury, a verdict was returned finding appellees not guilty of wrongfully withholding from appellant the possession of the premises in question. After overruling a motion for new trial the court entered judgment on that verdict, from which this appeal was taken.

It appears that one Jesse Randle was the owner of Nos. 227 and 229 Collinsville Avenue in the City of East St. Louis and on July 24, 1914, entered into a written lease with the East St. Louis House Furnishing Company for the premises known as No. 227 for a period of 5 years from May 13, 1915 to May 13, 1920. It was expressly provided in this lease that at the termination thereof peaceable possession be delivered by the lessee to the lessor. On September 12, 1917, this lease was assigned by the lessee, with the consent of the owner, to Henry L. Jaeger. Thereafter the Leader House Furnishing Company, a corporation of which Henry J. Jaeger was president and treasurer, conducted a furniture business in these premises. On February 4, A. D. 1919, the owner of these premises

entered into a lease with appellant, W. T. Grant Company, for said premises and also the adjoining premises known as No. 229 Collinsville Avenue, commencing on the 14th day of May, 1920, the next day after the expiration of appellees' lease, and extending for a period of 15 years. On July 3, 1919, the East St. Louis House Furnishing Company, by said Henry J. Jaeger, began correspondence with appellant in an attempt to secure an extension of its lease which expired May 13, 1920, and this correspondence continued until December, 1919. Upon the trial appellees introduced in evidence, over objection of appellant, a writing designated as Exhibit 1, which Henry J. Jaeger swore was the carbon copy of a letter which he himself wrote and mailed to appellant.

"Richard A. Slack,
Manager.

Kinlock, St. Clair 431;
Bell, East 242.
East St. Louis House Furnishing Co.,
227 Collinsville Ave.,
East St. Louis, Illinois.
December 15, 1919.

"W. T. Grant Company,
29-30 W. 23rd St.,
New York City.

"Gentlemen:

We note that you are unable to accept our telegraphic offer of December 11th. Conditions are such as render it practically impossible for us to secure other buildings, and we are submitting for your consideration a further offer for a subletting of our building and a portion of 229 viz.:

For our present building, including all space which we now occupy, we agree to extend our second floor easterly to the front wall and roof the same, such extension to make it join with the roof over 229, so as to give us a second floor over 227 of the length of 214 feet, and a second floor over 229 of its present length, and erect the ceilings and make all necessary inside

walls and connections so as to connect the entire second floor of our building when so improved with the second floor of 229, and we to have all the space that we are now using, and that made by the extension of our second floor, as well as the entire second floor over 229, and for which we agree to pay $600.00 per month for a period of five years and we to heat both of said buildings as we are now for five years, and pay the expense of all our own improvements. Let us hear from you by return mail.

Yours truly."

Appellees also introduced in evidence, over the objection of appellant, a writing designated as Exhibit 2, which Henry J. Jaeger testified appellees received in reply to the above letter which he claimed he had written appellant. This letter purports to be written on the letterhead of appellant, was dated December 20, 1919, directed to "East St. Louis House Furnishing Co., East St. Louis, Ill." and acknowledges the receipt of an offer from such Furnishing Co., dated December 15. It then proceeds to set out verbatim the contents of Exhibit 1 and closes as follows:

"We beg to say that we have given same due consideration, and appreciating the difficulty with which would confront you in moving a growing business from its present location, we have decided to and do accept your proposition, and will draft a lease containing the stipulations and conditions and will forward it to you for your approval and execution.

Yours very truly,
W. T. GRANT COMPANY,
R. N. Brinkman,
Assistant to the President."

Witnesses for appellant denied that appellant received Exhibit 1 and also denied that R. N. Brinkman or any one representing appellant wrote Exhibit 2. Such witnesses also testified that the stenographer to whom the second above letter purported to have been dictated was not in the office on the date of that letter but was at her home sick; that the said R. N.

Brinkman, by whom the second above letter purports to be written, was not authorized in any way to execute leases or transact any business for the execution of leases for appellant. Appellees rely upon this carbon copy of the letter known as Exhibit 1 and the purported letter from appellant known as Exhibit 2 as their authority for the holding of the premises in controversy. Appellant contends that the court erred in overruling its motion to dismiss the appeal and in admitting in evidence defendants' Exhibits 1 and 2.

It clearly appears from the record that appellees prayed an appeal from the judgment in the justice of the peace court on the day the judgment was rendered and that the amount of such appeal bond was fixed by the justice of the peace before whom the case was tried, but that the appeal bond was filed with the clerk of the circuit court and not with such justice of the peace. Section 19 of the Forcible Entry and Detainer Act [Cahill's Ill. St. ch. 57, ¶ 20] clearly provides that the amount of the appeal bond must be fixed ·by the justice of the peace who tries the case, and further, we think, provides that the appeal must be prayed for before that justice. Such has been the holding of this court in *Voorhees v. Schrieber,* 183 Ill. App. 626, and *Enright v. Rehbach,* 133 Ill. App. 50. Such is also the express holding of the Supreme Court in *Fairbank v. Streeter,* 142 Ill. 226. In this latter case it appears that the amount of the appeal bond was not fixed by the justice but that appellant filed his appeal bond in the office of the clerk of the court to which the appeal was sought to be taken. The opposite party moved to dismiss the appeal because it was not perfected in the manner required by the statute. The Supreme Court in its opinion states that the only question before the court was: "Can an appeal from the judgment of a justice of the peace in forcible detainer be perfected by filing an appeal bond in the office of the clerk to which the appeal is sought to be

taken, without first having the amount of the bond fixed by the justice before whom the case was tried.'' The court held that such an appeal could not be perfected by filing the appeal bond in the office of the clerk of the court to which the appeal was taken, without first having the amount of the bond fixed by the justice of the peace before whom the case was tried, and that the court to which the appeal was taken could not in the first instance fix the amount of the appeal bond. The Supreme Court in that case further said, referring to the party who had made the motion to dismiss the appeal: ''Had he moved to dismiss the appeal for want of a sufficient bond, either in amount or informality, he would have waived the very ground upon which his motion was in fact based.'' In the case under consideration here, appellant, after the first motion was overruled, filed a motion setting forth that the bond theretofore filed was insufficient in form and substance and asking that appellees be required to file a good and sufficient bond or that in default thereof the appeal be dismissed. This motion was sustained and a new appeal bond largely in excess of the first one was filed. We are of the opinion that under the authority of *Fairbank v. Streeter, supra,* appellant, by moving for a rule on appellees to file a good and sufficient bond and that in default thereof their appeal be dismissed, waived its rights to have the appeal dismissed upon the grounds named in such motion after the motion had been sustained and the new bond filed and approved and gave the circuit court jurisdiction of the case.

While Exhibit 2 purports to have been signed by R. N. Brinkman, it was admitted by appellees on the trial that he did not sign it but they contended it was signed by Miss DeStefano, his stenographer. The jury might have found in favor of appellees on that question, but from a careful consideration of all the evidence we are of the opinion the finding, in that re-

gard, is manifestly against the weight of the evidence.

But even if Exhibit 2 were signed by one who had ample authority, would it constitute a completed and binding contract? While a valid contract may be made by correspondence, care must be taken not to construe as an agreement letters which the parties intended only as preliminary negotiations. *Scott v. Fowler*, 227 Ill. 104. To constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer, and if it contains new conditions there is no contract. *Scott v. Fowler, supra.* If the party sought to be charged neither had nor signified an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. *Mississippi & D. Steamship Co. v. Swift*, 86 Me. 248, 29 Atl. 1063; *Hinote v. Brigman*, 44 Fla. 589, 33 So. 303; *Strong & Trowbridge Co. v. Baars & Co.*, 60 Fla. 253, 54 So. 92.

Where it appears that either of the parties intended that the contract should be reduced to writing so that its terms would be fully understood and definitely stated in the writing, the contract will not be regarded as complete or binding until it is reduced to writing and acquiesced in by both parties. *O'Cala Cooperage Co. v. Florida Cooperage Co.*, 59 Fla. 390, 394, 52 So. 13. Circumstances which have been suggested as being helpful in determining the intention of the parties are whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and premises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. 6 R. C. L. 619; *Mississippi & D. Steamship Co. v. Swift*, 86 Me. 248, 29 Atl. 1063.

An agreement for a lease must designate the length

or duration of the term, and even though the length of the term is stated, the memorandum is insufficient if it fails to state when it is to begin, as there is no inference that the term is to begin from the date of the agreement in the absence of language pointing to that conclusion. 25 R. C. L. 650.

In the case at bar, the offer made by appellees was to pay $600 per month for a period of 5 years, but there was no statement as to when the term was to begin. The subject-matter of the negotiations was the leasing of a valuable property for 5 years for which appellees were willing to pay $36,000, in addition to the expenditure of a large sum for improvements and the heating of the entire property during the term, although they were renting but a portion thereof.

The offer submitted by appellees does not describe the premises other than by referring to "our building and a portion of 229" with a more accurate description of the improvements to be made and the portion of the premises they were to have. There is nothing to show whether the rent was to be paid monthly in advance or at the end of each month, nor is there anything to show whether appellees were to have the right to assign the lease or sublet the premises or any part thereof, or who was to pay the water tax.

There is no presumption that appellees' offer and the alleged acceptance were to constitute a new lease in the same form as the old lease. *Sherry v. Proal,* 131 N. Y. App. Div. 774, 116 N. Y. Supp. 234. It is inconceivable that the parties intended that Exhibits 1 and 2 should constitute the completed and binding contract which was to evidence their rights and liabilities for a period of 5 years from a time not specified.

Exhibit 2 contains this language: "We have decided to and do accept your proposition, and will draft a lease containing the stipulations and conditions and

will forward it to you for your approval and execution." In our opinion this was not an unqualified acceptance of the offer, but an acceptance subject to and in accordance with the provisions of the lease to be submitted for approval and execution. An offer was made in writing to rent a certain store for 7 years at $5,000 per year, and the party making the same was advised that his offer was accepted. He replied, "All right, make out the lease." The lease was prepared and submitted to him, but never signed and it was held that there was no contract. *National Union Bldg. Ass'n v. Knab,* 177 Ill. App. 649.

An offer was accepted by cable which read as follows: "Accept 370; half cash, half debentures. Contract mailed," and it was held to be but an acceptance according to the contents of the contract. In other words, the offer and acceptance did not constitute a completed and binding contract. *Runyan v. Wilkinson, Gaddis & Co.,* 57 N. J. L. 420, 31 Atl. 390.

A letter stating, "We accept" the offer, "and now hand you two copies of the conditions of sale which we have signed; we will thank you to sign them and return one of the copies to us," was held not to constitute a contract until the copies were signed. *Crossley v. Maycock,* L. R. 18 Eq. 180, 43 L. J. Ch. 379.

Plaintiff, being about to bid for a contract to erect a building, submitted the plans and specifications to the defendant for an estimate as to the price at which the latter would do the metal work, and later received a letter from defendant saying that it would do the work for $2,850. Plaintiff's bid was accepted and he entered into a contract. He notified defendant that he had signed a contract and would be prepared to sign a written contract with defendant at 4 p. m. that day and defendant's manager said, "All right." Before that hour arrived plaintiff phoned defendant's manager that he had not had time to prepare the contract, but would have it ready next morning and the

manager said, "All right." The next morning plaintiff called on the manager, who then refused to sign the contract. It was held that there was no contract between the parties. *Donnelly v. Currie Hardware Co.,* 66 N. J. L. 388, 49 Atl. 428.

It clears appears that if appellant sent Exhibit 2 to appellees it never had nor signified an intention to close the deal except upon the terms of a lease to be submitted. If appellees received said exhibit from appellant it did not constitute a complete and binding contract, and its language was sufficient to advise them of that fact. It is rather strange that in a matter of so much importance to them they never inquired of appellant why the lease had not been forwarded.

If Exhibits 1 and 2 should be construed as a completed and binding contract, it would be but an agreement to execute a lease. Such an agreement is not a lease and in the absence of any acts amounting to an estoppel does not have the effect of a lease. This is the holding of the Appellate Court for the First District in *Seaver Amusement Co. v. Saxe,* 210 Ill. App. 289, and of this court in *Blake v. Kurrus,* 41 Ill. App. 562. This suit was instituted the first day after the expiration of the lease under which appellees had been holding the premises, therefore it cannot be rightfully contended that appellees went into possession of the premises by virtue of Exhibits 1 and 2, and it cannot be held that they were tenants from month to month under the rule approved in *Creighton v. Sanders,* 89 Ill. 543. Under the authorities cited, we conclude that even though Exhibits 1 and 2 were genuine and even though Brinkman had the authority to write Exhibit 2, they do not constitute a contract of leasing but only provide and contemplate that a lease be made in the future and that certain building be done and improvements made; that as the lease under which appellees had held the premises had expired and no new lease had been entered into by the parties concerned,

appellees were wrongfully withholding possession of said premises and appellant was entitled to maintain its suit.

In *Eichorn v. Peterson*, 16 Ill. App. 601, the lease contained a covenant for renewal and the lessee in possession elected to take the renewal but lessor refused to give him a new lease. In *Stanwood v. Kuhn*, 132 Ill. App. 466, the lease gave the lessee in possession the privilege of purchasing the premises at a fixed price during the term of the lease. Before the term expired the lessee elected to purchase and tendered the purchase money, which lessor refused to accept. In the case at bar, appellees are not claiming any rights by virtue of any of the provisions of the lease from Jesse Randle. They concede that all of their rights under that lease had expired before this suit was begun. We think this case is distinguishable from the cases aforesaid.

Under the law and the evidence, as we view it, appellees are unlawfully withholding possession of the premises. The judgment is reversed and the cause remanded.

*Reversed and remanded.*