JAMES FEELEY, Plaintiff and Counterdefendant Appellant, v. MICHIGAN AVENUE NATIONAL BANK, Trustee, *et al.*, Defendants and Counterplaintiffs Appellees.

First District (4th Division)   No. 84—2437

Opinion filed February 13, 1986.—Rehearing denied March 21, 1986.

Joseph J. Ticktin, of Chicago, for appellant.

Sanford Kahn, Ltd., and William J. Harte, Ltd., both of Chicago (Richard W. Christoff and William J. Harte, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

James Feeley appeals from the trial court's decision denying his request for a declaratory judgment declaring that the correspondence between him and Sigmund Lefkovitz, not a party to this action, is a valid lease. He further appeals the trial court's order granting the request of Michigan Avenue National Bank, as trustee under trust No. 4248 (the bank), and John F. Kretchmar, as sole beneficiary of trust No. 4248, for forcible detainer. Feeley contends that the trial court abused its discretion in refusing his request for declaratory relief and granting the forcible detainer. We agree.

■■ Feeley also contends that the issue of specific performance is before this court. However, a review of Feeley's complaint indicates that he requested only declaratory relief before the trial court. He cannot for the first time on appeal ask for relief or a remedy not prayed for in the trial court. (*Bell v. Yale Development Co.* (1981), 102 Ill. App. 3d 108, 112, 429 N.E.2d 894, 897-98.) Thus, the issue of specific performance is not properly before this court and we will not consider it.

In December 1982, Feeley allegedly entered into a sublease agreement with Jupiter Industries to sublet property known as room 730,

or 7—G (hereinafter referred to as room 730), 400 East Randolph Street, Chicago. During this time, Sigmund Lefkovitz was the owner of the property. Jupiter Industries' lease for room 730 was terminated by mutual consent in November 1982. Around that same time, Lefkovitz and Feeley entered into negotiations concerning the leasing of room 730 and, after several conversations, Feeley, on January 3, 1983, forwarded the following letter (offer) to Lefkovitz:

"This letter will serve to confirm the details of our telephone conversation of today wherein you and your D.T.P. Properties firm agree to rent 'Feeley Enterprises' and 'Popeil Records' Room #730 here on the seventh floor of the Outerdrive East which we have occupied since 12/82 under a sublease agreement with its then lease holder, Jupiter Industries.

Since Jupiter Industries have not paid you the current and last months' rent on this space 'Feeley Enterprises' will immediately issue a check in the amount of $1,343.25 payable to your D.T.P. Properties firm, as you requested, to cover full payment to you and D.T.P. Properties of this room #730's rental for 12/82, 1/83, and a full month's security deposit. And, future rent payments are to be sent to your office at the beginning of every month. With your acceptance of our check and our agreeing to this room #730 in its present condition, you and your firm guarantee that we will be issued a new three year lease commencing immediately for $447.75 a month complete along with our also being guaranteed that we will [be] entitled to extend this same present lease agreement at the end of its first three years with options of our choice for three period(s) of three years each at the end of each period for a total of 12 years.

It is also mutually agreed that should this particular space be made available for sale by you, your associates and/or agent, we shall be jointly and secondly singularly be given in writing the first option to purchase it at a qualified fair market price. But should we and/or our assigned agent(s) fail to exercise our option, and afterwards it is purchased by some one else, the terms of any alternate sale must stipulate that if said purchaser should desire early termination of this lease to occupy this space before its present and or future option(s) expiration(s), we and/or our agent(s) will all be given ninety (90) days advance notice in writing by registered mail of such intention plus immediately thereafter negotiate early termination compensation satisfactory to us and also render payment thereof for in-

convenience, interruption of business and all relocation expenses."

On January 10, 1983, Lefkovitz sent the following reply (acceptance) to Feeley:

"We thank you for your check number 11208 in the amount of $1,343.25 to satisfy the unpaid 12/82 rent by Jupiter plus your 1/83 rent and a one month's security deposit for Unit 7G in the Outerdrive East which you now occupy.

The terms stated in your 1/3/83 letter are accepted with the consideration of your first check and subsequent monthly rent payments. Your executed lease will be forthcoming."

Feeley's initial check was received by Lefkovitz and deposited in the bank account of D.T.P. Limited Partnership of which Lefkovitz was a general partner. Feeley's January, February, and March rental payments were also deposited in the account of D.T.P. Limited Partnership.

On April 14, 1983, Lefkovitz executed a real estate contract selling room 730 to John Kretchmar. Kretchmar had notice that Feeley was a tenant in room 730 and visited Feeley at his office several times prior to finalizing the purchase of room 730. Kretchmar testified that he and Feeley discussed Feeley's lease during their meetings. Kretchmar purchased the property, taking title in the name of Michigan Avenue National Bank as trustee under a land trust of which he is the sole beneficiary. Kretchmar subsequently notified Feeley that he was the new owner of room 730 and that his month-to-month lease would not be renewed. Feeley wrote back to Kretchmar notifying him that he (Feeley) had a valid three-year lease with the former owner, Sigmund Lefkovitz, and that he would not be vacating the premises.

Feeley filed suit to have the correspondence between him and Lefkovitz declared a lease and the bank and Kretchmar filed a forcible detainer action to have Feeley evicted from room 730. The actions were consolidated at the trial level. The trial court denied Feeley's request for declaratory relief and granted the request of the bank and Kretchmar for forcible detainer. It is from this decision that Feeley appeals.

OPINION

■ The grant or denial of declaratory relief is discretionary. (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 142, 370 N.E.2d 1036, 1039.) Absent an abuse of that discretion, the trial court's determination will not be disturbed on appeal. Nevertheless, the trial court's exercise of

this discretion is subject to a searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436, 425 N.E.2d 429, 432.

The trial court's decision to deny Feeley's request for declaratory relief and to grant the request for forcible detainer was based on its findings that the agreement between Feeley and Lefkovitz was an agreement to lease and not a present lease.

■ An agreement to lease is a contract to formally execute a contract in the future for exclusive possession of lands or tenements for a determinate period. (See *Griffin v. Knisely* (1874), 75 Ill. 411.) A lease is generally defined as a contract for exclusive possession of lands, tenements or hereditaments for life, for a term of years, or at will, or for any interest less than that of the lessor, usually for a specified rent or compensation. *Urban Investment & Development Co. v. Maurice L. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 550, 323 N.E.2d 588, 592.

■ In determining whether an instrument is a lease or only an agreement for a lease, the question is one of construction as determined from the intent of the parties. (*Griffin v. Knisely* (1874), 75 Ill. 411, 414.) The intention of the parties to be bound contractually can be determined as a matter of law. (*Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1984), 130 Ill. App. 3d 798, 803, 474 N.E.2d 1245, 1248.) Rules of contract construction are applicable to the construction of written leases in Illinois. *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 554, 281 N.E.2d 642, 645.

■ The bank and Kretchmar first contend that the agreement is not a lease because it did not contain a definite and agreed term. In Illinois, an instrument must contain the following four essential requirements to qualify as a lease: (1) a definite agreement as to the extents and bounds of the property; (2) a definite and agreed term; (3) a definite and agreed price of rental; and (4) the time and manner of payment. (*Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 150, 368 N.E.2d 196, 199.) Many other terms or requirements may be incorporated in a lease, but they are not essential to a complete and binding lease. (*Miller v. Gordon* (1921), 296 Ill. 346, 350, 129 N.E. 809, 810.) Additionally, to constitute a valid lease, there must be an offer and acceptance of the offer, and the acceptance must comply strictly with the terms of the offer. *Loeb v. Gray* (1985), 131 Ill. App. 3d 793, 799, 475 N.E.2d 1342, 1346.

A review of the letters constituting the agreement indicates that

Feeley specified that the tenancy would begin immediately and continue for three years. In our opinion, that is sufficiently definite. Additionally, the agreement contains the remaining essential requirements to constitute a lease, including an offer and a valid acceptance of the offer.

■ Because an agreement contains all the essential requirements of a lease does not necessarily make it a lease. The final determination in ascertaining whether an instrument is a lease is what was intended by the parties. (*Griffin v. Knisely* (1874), 75 Ill. 411, 414.) In determining whether the parties intended the instrument to be a lease, courts look to the language of the agreement (See *Illinois Life Insurance Co. v. Beifeld* (1914), 184 Ill. App. 582), the circumstances surrounding the negotiation of the agreement, custom in the industry or trade (*Evans, Inc. v. Tiffany & Co.* (N.D. Ill. 1976), 416 F. Supp. 224, 239), and the conduct of the parties before and after the agreement (*Rogers & Hall Co. v. Walden* (1917), 205 Ill. App. 415 (abstract of opinion)).

The trial court concluded that Feeley and Lefkovitz intended the correspondence to constitute an agreement to lease and not a present lease; that Feeley and Lefkovitz never entered into a formal present lease. Therefore, it concluded that when Kretchmar purchased room 730 from Lefkovitz, Feeley had only a month-to-month tenancy.

Kretchmar and the bank, citing *W. T. Grant Co. v. Jaeger* (1922), 224 Ill. App. 538, and *Seaver Amusement Co. v. Saxe* (1918), 210 Ill. App. 289, argue that because the parties intended that a formal agreement would be executed in addition to the letters, the letters constituted an agreement to lease and not a lease. The cases they cite to support their argument—that the agreement was an agreement to lease—are cases where the parties signed an initial agreement but contemplated signing a formal subsequent agreement. Both cases are distinguishable from the present case. In *Seaver*, the court indicated that the intent of the parties was clear. It pointed out that the parties reiterated in at least six different paragraphs of the agreement that the agreement was merely a contract for the execution of a future lease. (210 Ill. App. 289, 295.) On the contrary, nowhere in Feeley's agreement is it clearly indicated that the agreement between him and Lefkovitz was merely a contract for the execution of a future lease (*i.e.*, agreement to lease). In *W. T. Grant Co. v. Jaeger* (1922), 224 Ill. App. 538, the court held that the agreement did not constitute a lease because the acceptance of the offer was not unqualified. Thus, there was not a valid acceptance. (224 Ill. App. 538, 548.) Here, the acceptance of Feeley's offer was unqualified, thereby constituting a valid ac-

ceptance.

■ The contemplation of the execution of a formal lease does not render prior agreements mere negotiation where the parties intend that the formal agreement will be based substantially upon the earlier agreement. (*Borg Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 243-44, 156 N.E.2d 513, 518.) As the court said in *Bournique v. Williams* (1922), 225 Ill. App. 2d 21, quoting *Levin v. Saroff* (1921), 54 Cal. App. 285, 289, 201 P. 961, 963:

> " 'The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of a contract which was already expressed in writing. When one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as originally made, and the absence of the formal agreement contemplated is not material.' " Accord, *Staackman, Horschitz & Co. v. Cary* (1916), 197 Ill. App. 601; *Illinois Life Insurance Co. v. Beifeld* (1914), 184 Ill. App. 582.

■ As indicated previously, in ascertaining the intent of the parties, we examine the relevant circumstances surrounding the execution of the agreement, the conduct of the parties, the custom and usage of the real estate business, and the language and terms of the agreement itself. A review of the record with these factors in mind indicates that the parties intended to enter into a present lease. We based this conclusion on the following support: First, we note that we give little weight to Lefkovitz's testimony that he never saw the agreement between him and Feeley. Lefkovitz admitted that it was his signature on the letter accepting Feeley's offer and that he discussed the leasing of room 730 with Feeley on several occasions. Next, we note that the agreement between Feeley and Lefkovitz does not contain an express disclaimer indicating that the parties did not intend to be bound until a more formal document could be executed. In the real estate industry in Illinois, a nonbinding preliminary agreement would customarily contain language to that effect. (*Evans, Inc. v. Tiffany & Co.* (N.D. Ill. 1976), 416 F. Supp. 224, 239.) Lefkovitz was a developer. Therefore, he was or should have been familiar with the custom and usage in the real estate business. He was not a consumer whom we cannot expect to be familiar with the custom and usage in the real estate business.

Our review of the next factor, the language of the agreement, indicates there was a positive intent to be bound immediately and not at some future date. The following extracts from the correspondence between Feeley and Lefkovitz, as well as other language in the corre-

spondence, support this conclusion:

> "This letter will serve to confirm the details of our telephone conversation of today wherein you and your D.T.P. Properties firm agree to rent 'Feeley Enterprises' and 'Popeil Records' Room #730 ***.
>
> *** With your acceptance of our check and our agreeing to this room #730 in its present condition, you and your firm guarantee that we will be issued a new three year lease commencing immediately for $447.75 a month complete along with our also being guaranteed that we will [be] entitled to extend this same present lease agreement ***."

This language indicates that acceptance of the check guarantees that Feeley will be entitled to a new lease. Furthermore, Feeley used the words, "agree to rent" in the agreement. The use of these words in this type agreement usually indicates that the parties intend to enter into a present lease. *Illinois Life Insurance Co. v. Beifeld* (1914), 184 Ill. App. 582; see *Seaver Amusement Co. v. Saxe* (1918), 210 Ill. App. 289.

Finally, the circumstances surrounding negotiation of the agreement and the conduct of Feeley and Lefkovitz indicate a present lease was intended. The record indicates that Lefkovitz terminated the prior leasehold interest with Jupiter Industries for room 730 as of November 1982, and that he knew that Feeley, as unauthorized subtenant of Jupiter Industries for room 730, remained in the premises. Lefkovitz took no immediate legal action to evict Feeley from the premises. On the contrary, he and Feeley on several occasions discussed the leasing of room 730. Furthermore, the record indicates that his firm, D.T.P. Properties, cashed the checks forwarded by Feeley as consideration for the leasing of room 730, and Lefkovitz continued to accept monthly rental income from Feeley until April 1985, at which time he entered into a contract with Kretchmar for the sale of the room.

Based on the circumstances surrounding the negotiation of the agreement, the conduct of the parties, the language of the letters, and custom and usage in the real estate trade, we conclude the parties intended to enter into a present lease for room 730.

■ Next, we consider the forcible detainer order. As we concluded, Feeley had a valid present lease when Kretchmar purchased room 730. The record indicates that he had notice of this lease. Therefore, we hold that a forcible detainer action against Feeley cannot lie, and we reverse the decision of the trial court granting the request of the bank and Kretchmar for forcible detainer and denying Feeley's re-

quest for declaratory judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

LINN, P.J., and McMORROW, J., concur.