ARNOLD REALTY CO. *vs.* WILLIAM K. TOOLE CO.

JULY 11, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

RATHBUN, J. This is an action in assumpsit. For a considerable length of time the defendant occupied a store as a tenant from month to month of the plaintiff. In the fall of 1919 the plaintiff, having learned that it was the defendant's intention to vacate said store as soon as a building which had been purchased by the defendant was ready for occupancy, sought to obtain another tenant for the store. The plaintiff was thereafter told by a representative of the defendant that it would vacate the plaintiff's premises some time in the following January, February or March. On December 18, 1919, the plaintiff executed a lease for a term of years of the store in question to the Mohican Co. By the terms of the lease the Mohican Co. agreed to pay a certain rental which was higher than the defendant was paying and the plaintiff agreed to deliver possession to said company on February 1, 1920 and to pay as liquidated damages the sum of $500 per month for such time as may expire after said date before the delivery of possession. On January 2, 1920, the plaintiff caused a written notice to be served on the defendant notifying it to vacate and deliver possession of said store on or before February 1, 1920. The notice informed the defendant of the existence of said lease and the terms thereof and contained a statement that the plaintiff would be damaged to the extent of $1,166.67 per month for such length of time as the defendant should fail to deliver possession after February 1, 1920. The notice contained a further statement that the plaintiff, if the defendant failed to deliver possession on or before said date, would hold the defendant liable for damages at the rate of $1,166.67 per month for such time as intervenes between February 1, 1920 and the date

on which defendant delivers possession. On January 9, 1920, the defendant's attorney stated to the plaintiff's attorney that it would be impossible for the defendant to vacate before March 1, 1920; that it would vacate about March 1, 1920, but would not assume any responsibility to pay the sum mentioned in the notice to quit. The plaintiff's attorney in reply stated that the plaintiff would not consent to the defendant remaining in possession after February 1, 1920, and would stand upon the notice to quit. The defendant remained in possession until February 28, 1920, and vacated on said date. The plaintiff did not commence trespass and ejectment proceedings or make any attempt to eject the defendant by force. After the defendant vacated the plaintiff brought this action to recover the rental value of the premises and also $500, the sum which the plaintiff was compelled to pay the Mohican Company, in accordance with the terms of the lease, for failure to deliver possession to said company on February 1, 1920. The trial justice ruled that the defendant became a tenant of the plaintiff for another term of one month and that the defendant's only liability was for rent for the month of February at the rate at which the defendant had been paying and directed a verdict for the plaintiff for $681.76, the rent for one month at the old rate plus interest. The case is before us on the plaintiff's exception to the action of said justice in directing a verdict for a portion only of the plaintiff's claim and also on the plaintiff's exceptions to rulings excluding evidence.

The trial justice evidently relying upon language contained in *Providence County Savings Bank* v. *Hall*, 16 R. I. at 158, was of the opinion that it should be held that the plaintiff, by delaying for a full term after the termination of the tenancy by notice to quit without proceeding against the defendant as a trespasser, had not only waived the notice to quit but had elected to treat the defendant as a tenant for another term. The Hall case contains the following language: "If a tenant holds over without any new contract, it is

optional with the landlord to treat him either as a trespasser or as tenant from year to year, in case the prior term was for a year or longer; and if the prior term was shorter than a year, then from term to term, according to such shorter term."

The above quotation is followed by the following language, "an election to treat him as tenant, however, being inferable from any unreasonable delay to proceed against him as a trespasser, as well as from words or acts directly recognizing him as tenant." If such inference may be drawn from the mere delay of the landlord the inference is not only rebuttable but should not be drawn when the facts show that the landlord did not intend to treat the tenant holding over as a tenant for another term. In the case before us the landlord was reasonably certain that the tenant would vacate long before an execution in a trespass and ejectment action could be obtained. The defendant knew that the plaintiff did not consent that the defendant remain for another term. The attorney for the plaintiff told the defendant's attorney that the plaintiff would stand on the notice to quit and it should be borne in mind that the notice stated very definitely that the defendant would not be permitted to remain a tenant at the old rate but would be held responsible for all damages caused by the defendant's failure to vacate in accordance with the terms of the notice. The landlord, by delaying for a month to commence action, may have lost the right to eject the defendant without first giving such notice to quit as a tenant at sufferance is by statute entitled to receive, but a failure to eject a tenant by force or failure to begin legal proceedings would not, under the circumstances, amount to a consent that the tenant remain in possession, and the fact that the landlord did not disconnect the wires which conducted electricity for illuminating purposes to that portion of the building which was occupied by the defendant did not amount, as the defendant contends, to a recognition of the latter as a tenant for another term.

A landlord may, if he elects to do so, treat a tenant improperly holding over after his term has expired or after notice to quit as a trespasser and commence trespass and ejectment proceedings against him without further notice to quit provided the landlord acts with reasonable diligence. If he does not act diligently he must, before commencing proceedings to eject the tenant, give him such notice as a tenant at sufferance is entitled, by virtue of General Laws 1923, (5861), to receive. See *Mitchell* v. *Hyman*, 43 R. I. 267; 24 Cyc. 1042.

A tenancy at sufferance arises when a person comes into possession of land lawfully and holds over after the termination of his interest. 24 Cyc. 1042. See *Mitchell* v. *Hyman, supra.* Section 2, Chap. 385, General Laws 1923, provides that: "Persons in possession of lands or tenements as tenants by sufferance, shall be liable to pay rent therefor for such times as they may occupy or detain the same." As there was no express contract, relative to rent, between the landlord and the defendant holding over as a tenant at sufferance it follows that the landlord is entitled to recover for use and occupation the fair rental value of the premises. *Jackson Brewing Co.* v. *Wagner*, 123 La. Ann. 798; *Williams* v. *Ladew*, 171 Pa. St. 369; 16 R. C. L. 1168.

The plaintiff being entitled to recover the fair rental value of the premises for the month of February, 1920, it was a question of fact for the jury to determine what the value was. The trial court erred in excluding evidence tending to show what the fair rental value was and in directing a verdict for the plaintiff on the theory that the defendant was a tenant for another term at the old rate.

It was not error to exclude evidence showing that the plaintiff had agreed to pay, as liquidated damages, and had actually paid the Mohican Company $500, in accordance with the terms of the lease, for the failure, caused by the defendant's conduct, to deliver possession on February 1, 1920.

When a person whose tenancy has been terminated by a notice to quit holds over after being notified that the rent will be increased if he holds over, and the landlord is notified by the tenant that he refuses to agree to the increased rental, the tenant, by holding over, becomes liable, in an action of assumpsit for use and occupation, for only the fair rental value of the property and not for the amount which the landlord had arbitrarily fixed. See *Atkinson* v. *Cole*, 16 Col. 83; *Meaher* v. *Pomeroy*, 49 Ala. 146; *Lasher* v. *Heist*, 126 Ill. App. 82; *Galloway* v. *Kerby*, 9 Ill. App. 501; *Gallagher* v. *Himelberger*, 57 Ind. 63.

Section 2 of said Chapter 385 provides that tenants by sufferance shall be liable to pay rent. The language "liable to pay rent" has been construed to mean: liable to pay for use and occupation the fair rental value of the property. See *Merrill* v. *Bullock*, 105 Mass. 486; *Benton* v. *Williams*, 202 Mass. 189; *Guthman* v. *Vallery*, 51 Neb. 824; *Poole* v. *Engelke*, 61 N. J. Law 124; 2 Tiffany on Landlord & Tenant, 1492, Sec. 211.

If there was as the plaintiff contends an implied agreement to vacate whenever the tenancy may be terminated by notice—which is at least doubtful—the measure of damages would not be the amount which the plaintiff agreed upon in advance as liquidated damages for the plaintiff's breach of his contract with a third person. *Stone & Co.* v. *Postal Tel. Cable Co.* 35 R. I. 498; Sutherland on Damages, Sections 45 and 47; 17 C. J. 749.

The plaintiff's exceptions numbered one, two, three, four, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen and sixteen are sustained. All the other exceptions are overruled and the case is remitted to the Superior Court for a new trial.

*Gardner, Moss & Haslam*, for plaintiff.
*George J. Sheehan, William A. Toole*, for defendant.